## MANUEL FONCECA *vs.* FRANK VOYER.

### JANUARY 21, 1937.

PRESENT: Flynn, C. J., Moss, Baker, and Condon, JJ.

CONDON, J. This is an action of trespass on the case for negligence brought by Manuel Fonceca to recover damages for the death of his wife, Rose Fonceca, as a consequence of being struck down by defendant's motor truck while she was crossing Exchange street near its intersection with North Main street in the City of Pawtucket. The case was tried before a justice of the Superior Court sitting with a jury and, at the conclusion of the testimony, on motion of the defendant, the court directed the jury to return a verdict for the defendant on the ground that plaintiff's deceased wife was guilty of contributory negligence as a matter of law. The plaintiff duly excepted to this ruling of the trial justice and has brought his bill of exceptions to this court on that exception and on others taken by him to rulings of the court during the course of the trial.

In his brief and on oral argument before us counsel for the plaintiff relied solely on his exception to the ruling of the trial justice directing a verdict for the defendant and expressly waived all others. Hence, the only question before us is whether or not the trial justice erred in directing a verdict for the defendant.

In order to determine whether or not it could be said as a matter of law that the deceased did not exercise due care in crossing Exchange street, we have carefully considered that portion of the testimony which bears on the conduct of the deceased in attempting to cross the street at the time she did. We have also noted, in connection with that testimony, the testimony as to the conduct of the driver of defendant's truck, as he approached the intersection of said street with North Main street, in order to determine whether or not the jury could have reasonably found that the defendant's driver was negligent, and, whether, if he had been exercising the care required of an ordinarily prudent driver under all the circumstances, he could have avoided hitting the deceased.

The intersection of Exchange street and North Main street in the City of Pawtucket, where this fatal accident occurred, is marked with a traffic post on a concrete base and an overhead traffic signal equipped with automatically timed red and green lights. Crosswalks are marked for pedestrians and are 8 feet to 8.67 feet wide. The area of this intersection is well lighted by an overhead street light. Exchange street is paved with bituminous macadam and extends approximately east and west. North Main street extends north and south. There is a three percent grade on Exchange street just beyond the intersection with North Main street on each side so that a truck proceeding westerly on Exchange street toward North Main street would be going down-grade, approaching the traffic light, and then, almost immediately after passing it, would be going up-grade beyond North Main street. On the southwesterly and northwesterly corners of the intersection there are

buildings built up to the street line with stores on the ground floors. On the southeasterly and northeasterly corners, there are no buildings of any kind. Exchange street is practically straight for several hundred feet on each side of the intersection.

On May 4, 1932, about 10:30 p. m., Rose Fonceca had been observed by witnesses George H. Freeman and his daughter, Ruth Freeman, attempting to cross at this intersection. Several times she stepped from the curb at the southwesterly corner of North Main and Exchange streets into Exchange street apparently intending to cross to the north side of the latter street and each time she went back because of traffic that turned into Exchange street from North Main street. Finally, she got out into the middle of Exchange street, according to these witnesses, where they observed her for a minute or two hesitating or "bobbing around", as one of them expressed it. At just about this moment, the attention of these witnesses was diverted from the deceased by some conversation between them, when, suddenly, their attention was recalled by the grinding of brakes. They looked and saw the defendant's truck careening against the northerly curb of Exchange street, then righting itself, and coming to a stop a short distance further along the street. Then they saw the deceased lying in the street. They testified that they did not see the actual collision between the truck and the deceased.

Defendant's counsel attacked the credibility of one of these witnesses, George H. Freeman, by confronting him with testimony which he had given at a previous trial. With that we are not concerned here, as the question of the credibility of this witness was not open to the trial justice on the motion for a directed verdict.

There was no testimony by anyone at the trial as to the actual collision. The one who came closest to describing how the deceased met her death was the defendant's driver, Oliver J. Larrivee. He testified that, as his truck was proceeding west on Exchange street and after it had passed

under the traffic light, he saw a woman, about three feet off to his left at an angle from the left-hand side of his truck, and that she was running. This was the first time he saw her, although he insisted he was looking ahead as he approached the traffic light. He testified that he then steered his truck over to the right of the street to avoid hitting her, and mounted the north curb of Exchange street. He then steered to the left into the street again, stepped out onto the running board, looked back and saw something lying in the street. As a machine was parked where he had stopped, he drove further up Exchange street to Hamilton street, parked his truck, got out and walked back to the point where the woman was lying in the street. He further testified that, as he approached the traffic light and was going under it, he saw no one in the street. On cross-examination he insisted that he was looking ahead watching the street before him and that there was no one in the street at that time. He also testified that there was no traffic ahead of him. He admitted that at this point Exchange street is practically straight so that there is a clear view in a westerly direction for several hundred feet. All witnesses agreed that the area where the accident occurred was well lighted.

Two witnesses for the defendant, Halbert McDowall and Edwin E. Duckworth, who were seated in automobiles parked on the northerly side of Exchange street, over three hundred feet easterly of its intersection with North Main street, each testified that he saw an object or form in the street west of the intersection as the truck crossed North Main street. McDowall said he saw a dark object running from the left side of Exchange street as the truck went under the traffic light. Duckworth testified he saw a form dash out into Exchange street as the front of the truck was in the middle of North Main street.

There seems to be no question that if a person was in Exchange street at the time the truck passed under the traffic light, that person would be discernible to the driver

of an automobile who was maintaining a vigilant lookout.
Taking the testimony of the truck driver at its full value,
it is difficult to understand his statement that he was look-
ing ahead and yet did not see this woman in the street or
see her running in the street until he had passed the traffic
light.

The testimony shows that at this intersection Exchange
street is thirty-eight feet wide from curb to curb, and that
North Main street is approximately thirty-seven feet wide.
The traffic light is 11.2 feet easterly of the westerly curb
line of North Main street, so that it is well over on the
westerly portion of that street. When the truck passed
under this light, Larrivee testified that he looked ahead
and saw no one in Exchange street and that he was then
proceeding at a speed between twenty and twenty-five miles
per hour, so that, on his own testimony, his truck would be
just 11.2 feet from the westerly curb line of North Main
street as it passed under the light.

There is some testimony that the deceased was attempt-
ing to cross Exchange street on the crosswalk west of this
westerly line of North Main street. Larrivee testified that
she was slightly west of the crosswalk when he first saw
her. There was testimony that an automobile moving at
twenty miles per hour travels twenty-nine feet per second.
Assuming that, as Larrivee testified, there was no one in
Exchange street ahead of him as the truck passed under
the traffic light, then the deceased must have started to
cross Exchange street from the southerly sidewalk of that
street after the truck had passed under the traffic light.
It is not denied that the collision between her and the
truck actually occurred north of the center line of Ex-
change street and, according to Larrivee, slightly west of
the crosswalk. On Larrivee's testimony, it is obvious that
the deceased could not have collided with his truck unless
she traveled approximately thirty feet while the truck was
traveling about nineteen feet. Considering the rate of
speed of the truck at the time of the accident this is mani-

festly impossible. The physical facts clearly contradict Larrivee on this point.

There is another difficulty with this case which makes it impossible for us to consider it as one of undisputed facts from which only one proper inference can be drawn. Defendant's witness, Charles Sullivan, testified that he was driving his automobile easterly along Exchange street and that as he approached North Main street he noticed the defendant's truck coming toward him and he slowed down, thinking it might turn across his path southerly into North Main street. He noticed, however, that it continued on its course across North Main street and, as it did so, it swerved to the right and then tipped slightly to the left. He then saw an object in the street to the left of the rear of the defendant's truck, and about three-quarters of the way across Exchange street to his left. He further testified that when the truck stopped, the front of it was about opposite to him as he sat at the steering wheel of his automobile. Mrs. Sullivan, who was riding next to her husband, testified that she saw the light turn green as they approached North Main street from High street, which street is westerly of North Main street. She also testified that she saw no one in Exchange street in front of them. She further testified that she saw the truck swerve to the right and saw an object in the road to the left of the truck which looked to her like a sack of potatoes. Another passenger in the front seat with the Sullivans, Anna R. Jenkins, testified substantially to the same effect. None of these witnesses testified to seeing the deceased cross in front of their automobile from the southerly sidewalk of Exchange street, although they all said that they were looking ahead of them and saw that the traffic light was green as the truck passed under it. If at that time a woman was running into Exchange street from the southerly sidewalk of that street, apparently these three witnesses did not see her, although they were the persons closest to that sidewalk.

If Larrivee's testimony is correct, the deceased would have been in the act of running across that side of Exchange street over which the Sullivan automobile was traveling in an easterly direction just about the time that it approached the traffic light. Yet none of the witnesses who were in the Sullivan automobile on that side of Exchange street at that time saw any one in the street in front of them. On the other hand, the plaintiff's witnesses, George H. Freeman and his daughter, place the deceased in the center of Exchange street an instant before the accident occurred. Their testimony is consistent with that of defendant's witnesses who were in the Sullivan automobile; those witnesses saw no one in front of them on the southerly side of Exchange street. Mr. Sullivan placed the deceased about three-quarters of the way across Exchange street at the time the truck collided with her, or about in the middle of that part of the street to the left of the center line.

This reference to the testimony will suffice to show that there was a clear conflict even between the defendant's own witnesses as to whether or not there was anyone in Exchange street west of the traffic light at the time the defendant's truck approached the light and passed under it. The jury, if the issue had been submitted to them, might reasonably have inferred from the testimony of the witnesses in the Sullivan automobile that the plaintiff's deceased was somewhere to the left of that automobile and to the left of the middle of Exchange street when Sullivan was approaching the traffic light, and when the defendant's truck was passing under the light.

Mr. Duckworth positively testified that the front of the truck was approximately in the middle of North Main street with its rear about even with the easterly curb line of that street when he saw a dark form dash out from the southwesterly corner of Exchange street. McDowall also testified that an object darted out into Exchange street from the southerly sidewalk of that street, but he placed

the truck beyond the light at the time this occurred. This testimony is not consistent with that of Larrivee, who testified that no one was in the street at that time. It is even more inconsistent with the testimony of the Sullivans and the Freemans. On all the testimony the conclusion is inescapable that here was clearly a question for the jury as to what was the conduct of the deceased, and whether she acted with due care under all the circumstances.

In this state of the defendant's evidence, it is incorrect to say that the plaintiff's deceased was guilty of contributory negligence as a matter of law. "The question of contributory negligence is one for the jury unless it clearly appears that the only proper inference from the undisputed facts is that in the circumstances of the case a person of ordinary prudence would not have acted as did the plaintiff." *Jacobson* v. *O'Dette*, 42 R. I. 447. The situation presented by the testimony in the instant case was clearly not one of undisputed facts. What the plaintiff's deceased did and how she acted just before the accident is a subject of controversy not only between the witnesses for the plaintiff and those of the defendant but also between the defendant's own witnesses. It was therefore the duty of the trial justice, under these circumstances, to deny the defendant's motion for a directed verdict and submit the question to the jury.

It would appear from the record that he misconceived his duty and decided the motion before him as though he was deciding a motion for a new trial. At the conclusion of the plaintiff's evidence he denied defendant's motion for a nonsuit in the following language: "There is, as I see it, some testimony here of a considerable speed at an intersection, of a woman standing for a very appreciable length of time in the middle of the highway, and on the crossing, so-called. Well now in that state of affairs, and with the Court's inability to weigh the evidence, and consider what it might—to say what it might think of the character of it, that being only possible for the Court on

a motion for a new trial, I don't feel that it is a case that is proper for me to nonsuit." This comment would have been just as appropriate in support of a refusal of the motion for a directed verdict for the defendant at the conclusion of all the evidence as it then became, if anything, more obvious that the case was clearly one of conflicting evidence, and could be decided only by weighing the testimony of the witnesses and passing upon their credibility.

The trial justice seems to have been of the opinion that certain testimony, with reference to an ordinance of the City of Pawtucket, introduced by the defendant, altered the case from what it appeared to be at the conclusion of the plaintiff's evidence. In granting the defendant's motion, he said: "Under this ordinance, under the testimony we have now, of course there was no right on the part of Mrs. Fonceca to cross at that time. That is her right—the light which would allow her to go up North Main street or cross there was red at the time; that the other light was green under which the truck went. . . . Without deciding it now, because I mean to give you an opportunity to say what you wish, my own feeling is that this truck came along and had, of course, according to the light, the right to go through, and Mrs. Fonceca did not have the right to go in the opposite direction." This was error. "None of the rules of the road are so imperative that it is always negligence to disobey them." *Oates* v. *Union R. R. Co.*, 27 R. I. 499, 503. The ordinance was evidence for the jury to consider along with all other evidence bearing on the question of the alleged contributory negligence of the plaintiff's deceased.

The jury might reasonably have found from the testimony before them that the deceased had actually left the sidewalk when she was entitled to do so, and that the traffic light had changed while she was still on the crosswalk and before she had reached the opposite sidewalk. It certainly is not the undisputed evidence that she left

the sidewalk when the light was red, and when vehicular traffic was moving across her path. There is testimony both ways on this point. Which was the more credible testimony was not for the trial justice to say on consideration of a motion for a directed verdict. Rather it was his duty at that time to view the evidence in a light most favorable to the plaintiff and to draw therefrom all reasonable inferences in the plaintiff's favor. *Riley* v. *Tsagarakis,* 50 R. I. 62.

There is another point which has been raised and argued. The plaintiff contends that there is evidence in the record sufficient to warrant the submission of the case to the jury with proper instructions on the doctrine of the last clear chance. The testimony of defendant's driver and other witnesses affords some ground for this contention. The driver testified that as he approached the traffic light he looked ahead and saw no one in Exchange street. The Sullivans testified that they were on the southerly side of Exchange street headed toward the direction from which the truck was coming and that they saw no one in front of them as the truck passed the light, but they did see, an instant later, the object with which the truck had collided three-quarters of the way across Exchange street to their left. From this testimony, together with that of the Freemans, who positively place the deceased in the middle of Exchange street before the accident, the jury might reasonably have found that the plaintiff was in the act of crossing Exchange street and actually more than half way across it in full view of traffic approaching from the east, as was the defendant's truck, and that the defendant's driver, if he had been keeping a proper lookout, could have seen her in time to avoid a collision.

Defendant's driver had been on duty continuously for seventeen hours, from 5 o'clock, a. m. until the time of the accident, at about 10:30 o'clock, p. m., except for a brief lay-off about noon for two and one-half hours. During all that time he had been constantly driving through

heavy traffic in the City of Boston and was completing his day.'s work on this final run from Boston to Pawtucket, where he was to put up for the night. His helper, who was on the seat with him, was sleeping at the time of the accident. These circumstances were proper for the jury to consider in weighing the driver's statement that he was watching the road and saw no one in Exchange street as he passed under the traffic light.

A careful reading of the record convinces us that the trial justice erred in granting the defendant's motion for a directed verdict. The evidence, when carefully weighed and considered, does not establish the contributory negligence of the deceased as a matter of law. On the contrary, it raises a clear question of fact on that point. In the absence of a set of undisputed facts from which only one proper inference can be drawn, the question of contributory negligence is a question for the jury. *Jacobson v. O'Dette, supra.* Unless this rule is carefully adhered to, plaintiffs will be unjustly denied a jury trial in violation of their constitutional right thereto.

The plaintiff's exception to the ruling of the trial justice directing a verdict for the defendant should be sustained and the case should be remitted to the Superior Court for a new trial.

FLYNN, C. J., concurs in the opinion of CONDON, J.

BAKER, J. After considering the evidence presented in this case, I am unable to reach the same conclusion as that arrived at in the foregoing opinion.

From the testimony it appears that the square or intersection, on the further side of which the accident happened, was reasonably well lighted and between curbs was approximately thirty-seven feet in each direction. The defendant's truck, with its lights on, passed, in a westerly direction, through this intersection well on its right side of the highway at a speed estimated by different witnesses at between twenty and thirty miles an hour. The traffic at the time of the accident was not heavy, visibility was

good, and no serious contention is made that the traffic light was other than green, in favor of the truck as it neared and passed under the light. When found, after the accident, the body of the plaintiff's wife was some distance to the north of the middle line of the street she was attempting to cross from the southwest corner of the intersection.

No witness saw the defendant's truck actually strike the deceased. There is no evidence that she was hit by the front of the truck. The testimony of the defendant's driver and of two men who were in different automobiles parked at some distance from the place of the accident, in the direction from which the truck was proceeding, tends to show that she ran suddenly from the sidewalk or from a point in the crosswalk into the side of the truck. No other reasonable inference as to her conduct or the cause of the accident can be drawn from the evidence of these witnesses.

The defendant produced three other witnesses who were in an automobile approaching the intersection from the west and not far away. They saw the defendant's truck but did not see the plaintiff's wife until after the accident. They noticed the truck swerve suddenly to its right and then saw an object falling or lying in the street toward the rear of the truck. In view of the fact that these witnesses did not see the deceased at all until after the occurrence, although obviously she must have been somewhere in the highway immediately before her death, their testimony throws no light on how the accident happened, and no reasonable deduction, which is of aid to the plaintiff, in view of the established facts of this case, can properly be made from such testimony.

Two of the plaintiff's witnesses, who were on the sidewalk near the corner, testified in substance that shortly before the accident they saw the deceased, after several attempts, leave the sidewalk to cross the street and that she moved uncertainly back and forth in the roadway for

a space of time. They did not see the defendant's truck while observing the deceased's movements, although they testified that the accident itself, the happening of which they did not witness, occurred while they had turned their heads to speak to each other and soon after they saw the deceased moving about in the highway.

The indefiniteness of this testimony, particularly with respect to the relative positions of the deceased and of the truck in the highway shortly before the accident, and the further fact that, according to these witnesses, when she was last seen the plaintiff's wife, with her vision unobscured, was moving uncertainly about in the highway, prevent any proper inference being made in favor of the plaintiff's contention that the deceased was exercising due care under the circumstances.

The trial justice granted the defendant's motion for a directed verdict on the ground that the plaintiff's wife had been guilty of contributory negligence as a matter of law. In my judgment, this ruling was correct. It is not disputed that ordinarily the question of contributory negligence is one of fact for the jury and that if, on any reasonable view of the evidence, the plaintiff can recover, then a verdict should not be directed for the defendant. Nevertheless, it is well settled that if it clearly appears that the only proper inference from the facts is that, in the circumstances of the case before the court, the injured person did not act as an ordinarily prudent person would have acted, then it is the duty of the trial court to direct a verdict for the defendant, if requested. *Gilbane* v. *Lent,* 41 R. I. 462.

The record is vague and uncertain as to just how the accident in the instant case occurred. The testimony is not sufficiently clear to justify an application of the doctrine of the last clear chance. There is no evidence to show, or from which an inference can reasonably be drawn, that the defendant's driver could have avoided the accident, by the exercise of reasonable care, after the deceased was unable to avoid it, by the exercise of such care on her

part; or that he discovered her peril in time to avoid the accident by his own exercise of reasonable care. On the contrary, the only proper deduction from the evidence is that she was herself negligent up to the time of her injury and that within a very few seconds before that happening, she could have avoided the accident by the exercise of reasonable care. In *Sarcione* v. *The Outlet Co.*, 53 R. I. 76, at page 78, it was held that: "A jury should not be permitted to speculate when there is no evidence that the defendant had the last clear chance to avoid the accident."

I am of the opinion, therefore, that on no reasonable view of the testimony and the proper inferences to be drawn therefrom can the plaintiff recover. In my judgment, the plaintiff's exception to the action of the trial court in directing a verdict for the defendant should be overruled.

Moss, J., concurs in the opinion of BAKER, J.

PER CURIAM. This court having divided evenly, the plaintiff's exception to the action of the trial court in directing a verdict for the defendant is overruled, and the case is remitted to the Superior Court for entry of judgment for the defendant on the verdict as directed.