In re ESTATES OF KOCH.

(CLARA E. KOCH, probate No. 10442, and ARTHUR L. KOCH, probate No. 10443)

ELMER KOCH et ux., appellants, v. CLARENCE W. GOFF, administrator with Will annexed, appellee.

No. 51265.

(Reported in 127 N.W.2d 571)

April 8, 1964.

Bailey C. Webber, of Ottumwa, for appellants.

Livingston, Day & Bates and E. D. Morrison, Jr., all of Washington, for appellee.

STUART, J.—Elmer and Lucille Koch filed identical claims in the estates of Elmer's parents, Arthur L. Koch and Clara E. Koch, which were consolidated for trial. In Count I they sought to recover $24,620.22 on a "verified acknowledgment of debt". Count II was an alternative count in the same amount based upon individual transactions for moneys loaned and advanced, services rendered and work performed. In Count III Lucille Koch claimed $9000 for housekeeping and nursing care for Clara E. Koch. The administrator filed a counterclaim for $22,989.80. The jury returned a verdict for defendant-administrator on Counts I and II, allowed Lucille $2500 on Count III and awarded the administrator $4950 on his counterclaim. Claimants have appealed.

I. To establish Count I, claimants introduced into evidence an instrument, which read:

"We, Arthur L. Koch and Mrs. Clara E. Koch, husband and wife, of Washington County, Iowa, hereby acknowledge that we are indebted to Elmer Koch and Lucille Koch in the sum of $24,620.22, for money advanced and loaned to buy real estate, for money advanced and loaned to buy and feed livestock, for money paid and advanced in the payment of bills in connection with the general operation of our farms, for money paid and advanced to build a garage, to remodel a house, for building a tenant house, for repairing buildings, for fencing material furnished, for bulldozing, for seed, for fertilizer, for limestone and otherwise, all in connection with farm properties owned by us, and said amount shall be paid to the said Elmer Koch and Lucille Koch without the necessity of formal proof or itemiza-

tion and, if not sooner paid, shall be allowed as a claim against the estate of either or both of us.

"Dated at Brighton, Iowa on this 22nd day of April, A.D., 1959." The signatures of Arthur L. Koch and Mrs. Clara E. Koch were notarized by Lee Emry on the same date.

Mr. Emry testified he was asked to come to the Koch home and bring his adding machine. He placed the figure of $24,-620.22 in a blank in the typewritten instrument. The figure was obtained by adding individual items which appeared on 12 sheets of notebook paper. He had started to add figures from individual checks, but Mr. Arthur L. Koch suggested he use the sheets. He checked the first several items and found them to be identical with the checks. Both Arthur L. Koch and Clara E. Koch were present. Elmer was not in the house and Lucille was in and out of the room.

Claimants requested the following instruction:

"The instrument, Exhibit P-4, is a written acknowledgment of debt to Elmer and Lucille Koch in the sum of $24,620.22, from which the law implies or infers a promise by Arthur and Clara Koch, to pay that amount to Elmer and Lucille Koch.

"The undisputed evidence shows this instrument was signed by each of the decedents, and as such establishes the claim of the plaintiffs under Count I in the full amount of $24,620.22, unless defendant has established by a preponderance of the evidence one or more of the special defenses to which he has pleaded as hereinafter set out."

The trial court refused this instruction and, instead, instructed the jury the instrument was effective only to revive the original cause of action by tolling the statute of limitations and that the claimants had to prove each item of their claim and allowed the jury to determine the reasonable value. These actions of the trial court are assigned as error.

The instrument clearly expresses its intent and purpose. In it Arthur L. Koch and Clara E. Koch acknowledge an indebtedness to Elmer and Lucille Koch in a stated amount growing out of past transactions of a specified nature. Payment is to be made without formal proof or itemization. No question is raised as to its execution. The affirmative defenses urged by admin-

istrator are not to be considered in disposing of this issue. Therefore, the pivotal question is whether such an instrument creates a new obligation upon which suit can be brought or operates merely to revive or extend the statute of limitations on the transactions upon which it is based. It is our conclusion this written acknowledgment of a debt is an account stated expressed in the form of a due bill. It is not just an admission in writing reviving a cause of action as contemplated in section 614.11, Code of Iowa.

██ An account stated has been defined as "an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance. It must show that there is a balance due, the amount of that balance, and from whom it is due. The doctrine of accounts stated now generally extends to all cases where the relation of debtor and creditor exists, * * *. Its importance lies in the fact that it imputes to the apparent debtor an admission of liability for the amount of the balance against him and an actionable promise to pay it." 1 C. J. S., 693, 695, Account Stated, section 1; Weaver Construction Co. v. Farmers National Bank, 253 Iowa 1280, 1287, 115 N.W.2d 804; see also 1 Am. Jur.2d 396, 397, Accounts and Accounting, section 21.

██ "An account stated may be shown by any instrument based on past transactions and admitting indebtedness in a certain sum thereon. Thus the requisite assent may be evidenced by the execution of promissory notes, checks, duebills, or acceptances." 1 C. J. S., 714, 715, Account Stated, section 36.

"The amount or balance so agreed upon constitutes a new and independent cause of action, superseding and merging the antecedent causes of action represented by the particular items. It is a liquidated debt, as binding as if evidenced by a note, bill, or bond. Though there may be no express promise to pay, yet from the very fact of stating the account the law raises a promise as obligatory as if expressed in writing, to which the same legal incidents attach as if a note or bill were given for the balance." 1 Am. Jur.2d 396, Accounts and Accounting, section 21.

"The statement of an account may constitute an acknowledgment of the indebtedness represented by the items of the open account such as to permit a suit on the balance due, even though the individual items antedate the period of limitations." 1 Am. Jur.2d 414, Accounts and Accounting, section 39.

This particular instrument appears to have been prepared with these principles in mind as it clearly meets their requirements. Although an account stated has been recognized in several Iowa cases, Weaver Construction Co. v. Farmers National Bank, supra; Johanik v. Des Moines Drug Co., 240 Iowa 310, 36 N.W.2d 370; Hanson v. S. & L. Drug Co., 203 Iowa 384, 212 N.W. 731; McCornack v. Central State Bank, 203 Iowa 833, 847, 211 N.W. 542, 52 A. L. R. 1297; Hollenbeck v. Ristine, 105 Iowa 488, 75 N.W. 355, 67 Am. St. Rep. 306; Morse & Littell v. Minton, 101 Iowa 603, 70 N.W. 691; Frost v. Clark, 82 Iowa 298, 48 N.W. 82, in none of them, with the possible exception of the Johanik case, is the intent and purpose of the instrument so clearly stated.

While we do not refer specifically to an account stated in Trenary v. Swan, 93 Iowa 619, 61 N.W. 947, we arrived at the same conclusion we reach here. There a statement of indebtedness was made and delivered which was intended as the basis of a confession of judgment. Such judgment was never entered by the clerk. Suit was brought on the acknowledgment of the indebtedness and we said:

"There is a claim that the court could not make a nunc pro tunc order in such a case. We do not understand such an order to have been made. The order for judgment does not appear to be retroactive in its effect, but simply for a present judgment based on the statement of indebtedness. Such a judgment may well be sustained. If the statement of indebtedness be treated as not having been filed or placed of record, but merely as having been made and delivered to Close, we have an instrument in writing creating a legal obligation to pay, on which a cause of action may be maintained. Every element of a legal obligation is contained in the statement, with the particular facts giving rise to the obligation. We think the District Court took this view of the record, for its judgment does not purport to

be one of confession, but one upon an issue formed by the pleadings showing an obligation for payment.

"The claim of appellant, under his plea of the statute of limitations, is that the action is barred in five years, as if brought on the original indebtedness. It is said that the statement for judgment is 'only an admission of the indebtedness of the original cause of action, and not a new cause of action.' The very object of the statement was to create or make a written obligation on which a judgment could be entered. We do not see how one could more conclusively create a cause of action than by such a statement, made with a view that it should be the basis of a judgment. Such an act is more than a mere admission of indebtedness. It is an obligation for payment in writing, giving rise to a cause of action thereon. The judgment of the District Court is affirmed." Pages 621 and 622 of 93 Iowa.

In Morse & Littell v. Minton, 101 Iowa 603, 605, 606, 70 N.W. 691, we say:

"In 1 Am. & Eng. Enc. Law (2d Ed.), 437, an account stated is defined to be 'an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true, and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance.' It may be that an account stated need not include an agreement that all the items representing the transactions between the parties to it are true, but it includes an agreement, which fixes the amount due by reason of such transactions. It virtually determines what items are correct, and the balance due. 'An account stated is in the nature of a new promise or undertaking, and raises a new cause of action between the parties.' 1 Am. & Eng. Enc. Law (2d Ed.), 456, and note 2."

The instrument is clearly an account stated under the authorities discussed above. We have said an account stated "may only be set aside for fraud and mistake with the burden resting on the party seeking to do so. In the absence of such evidence an account stated is conclusive both in law and equity," Johanik v. Des Moines Drug Co., 240 Iowa 310, 315, 36 N.W.2d

370. 1 C. J. S. 724, Account Stated, section 43(2) ; 1 Am. Jur.2d 408, Accounts and Accounting, section 34.

■ "Since the balance agreed upon, and not the constituent items of the account, constitutes the basis of an action upon an account stated, it is erroneous, in such an action, to permit a recovery upon the basis of a quantum meruit." Idem, section 42, pages 416, 417.

It therefore follows that the trial court erred in failing to give in substance claimants' requested instruction number 6; in limiting the jury's consideration of the effect of the instrument to the statute of limitations; in requiring claimants to prove each item of their claim; and in permitting the jury to fix a reasonable value upon said claim.

Even if the jury were to find in claimants' favor on Count I, the administrator still has the right to press his counterclaim. He does not question the accounting for the items listed in the instrument. The counterclaim is based upon notes, back rent, corn and machinery purchased and similar items unconnected with the items covered in the account stated.

■ "An account stated extends only to those transactions contemplated by the parties, and in an action on a stated account the party against whom the balance is claimed may set off against it any balance which he claims from the items not included in the settlement." 1 Am. Jur.2d 415, Accounts and Accounting, section 40.

"The primary question in an action on an account stated is whether both parties intended the transaction to become a full and final settlement of the entire indebtedness represented thereby, and this question is determined from all the circumstances of the case. If the evidence is conflicting, the question is one of fact for the jury upon proper instruction from the court. But if the evidence is uncontradicted the question is one of law for the court." 1 Am. Jur.2d 416, Accounts and Accounting, section 42.

"Evidence of fraud to avoid or impeach an account stated must be clear and convincing. Where the defendant claims, by way of setoff or counterclaim, items of account which he alleges were not included in the stated account, the burden is on him,

in order to substantiate such claim, to prove that such items were not included in an account stated." 1 Am. Jur.2d 418, Accounts and Accounting, section 43.

"In an action on an account stated which does not cover all transactions between the parties, the debtor may set off items omitted or left for future adjustment, or counterclaim a breach of warranty as to certain items included in the account where such breach was not discoverable until after the stating of the account; but this rule may be changed or modified by special controlling agreements between the parties." 1 C. J. S. 741, Account Stated, section 59c.

The following cases hold that an account stated may be a partial account stated covering only items therein considered and that a party have a setoff or counterclaims on items not included. Reed v. Thomas, 134 Kan. 849, 8 P.2d 379, 84 A. L. R. 110; Boston and Maine R. v. Lehigh and New England R. Co., 188 F. Supp. 486, 490; Nello L. Teer Co. v. Dickerson, Inc., 257 N. C. 522, 126 S.E.2d 500, 507. See annotation, 175 A. L. R. 248.

Administrator cites Burns v. Burns, 233 Iowa 1092, 11 N.W.2d 461, 150 A. L. R. 306; In re Estate of Sleezer, 209 Iowa 56, 227 N.W. 644; Bayliss v. Street, 51 Iowa 627, 2 N.W. 437; and Frisbee v. Seaman, 49 Iowa 95. The last cited case involved an outlawed judgment. The other three cases involved outlawed notes. None of them applies to situations in which a series of transactions between two parties are merged into a new obligation by an account stated. They are good authority for the proposition therein involved, but are not applicable here.

II. The second question presented on this appeal is whether claimant Elmer Koch was competent under the dead man statute, section 622.4, Code of Iowa, to testify with respect to certain checks for farm seeds and supplies used on decedents' farm properties. He testified he planted crops of corn, oats, beans and meadow and bought and used seed in connection with these planting operations on his parents' farm. He was then handed a bundle of checks and asked if those checks represented money spent at or about the date of the check for seed. Objection to the witness's competency under section 622.4 was sustained. Claimant then offered to show he drew the check to

pay the named payee for seed used on the Koch farm in connection with crops planted thereon and that neither Arthur nor Clara Koch participated in the "purchase, delivery or planting of any seed, and in no way took part in any transaction relating to the purchase, planting or payment of said seed."

Claimant concedes his position is contrary to our holding in Griffith v. Portlock, 233 Iowa 492, 495, 7 N.W.2d 199, and cases cited therein, but takes the position it is bad law and should be overruled. The Griffith case involved a claim for improvements made to a home owned by decedent. We said "claimant and his wife were incompetent under section 11257, Code 1939, to testify to the expenditures for improvements made by claimant for decedent or to any fact which tends to establish an express or implied contract between claimant and decedent. Ballinger v. Connable, 100 Iowa 121, 129, 130, 69 N.W. 438; In re Estate of Kahl, 210 Iowa 903, 911, 912, 232 N.W. 133, and cases cited." This language has been repeated in Johnson v. Fosnacht, 245 Iowa 1251, 1253, 65 N.W.2d 446, and in In re Estate of Kerndt, 251 Iowa 963, 967, 103 N.W.2d 733.

The factual situation there is different from the facts in the cases cited by claimant and we are not disposed to change the language of the Griffith case as it applies to proof of expenditures by claimants. The trial court correctly sustained the objections made as to the competency of the witness under section 622.4, Code of Iowa.

III. The trial court permitted the administrator to introduce former wills and codicils of Arthur and Clara Koch and other documents into evidence over claimants' objections as to the relevancy or materiality. The trial court did not err in admitting this evidence. In Ipsen v. Ruess, 241 Iowa 730, 734, 41 N.W.2d 658, we quote with approval from 1 Jones on Evidence, Fourth Ed., section 137, page 238, with reference to relevancy, as follows: "the question to be resolved is as to whether there is a logical or rational connection between the fact which is sought to be proved and a matter of fact which has been made an issue in the case."

In Hayes v. Stunkard, 233 Iowa 582, 590, 10 N.W.2d 19, the relevancy of certain circumstantial evidence was chal-

lenged. The court in holding the evidence should have been admitted said: "The trial court has a good deal of discretion in deciding whether such testimony is admissible. Johnston v. Calvin, 232 Iowa 531, 5 N.W.2d 840. But nearly all of plaintiff's case was founded upon circumstantial evidence. Great latitude should be allowed in the reception of circumstantial evidence where a party must rely on that form of evidence to prove his theory. White v. State, 59 Fla. 53, 52 So. 805."

Claimants cite Cowan v. Musgrave, 73 Iowa 384, 386, 387, 35 N.W. 496(1887), in which this court held it was error to admit a will in a claim in probate for services rendered. We said:

"It appears from the will that the testator bequeathed to each of his children, including the plaintiff, the sum of $50, and to the children of his son George Musgrave all the residue of his estate. It is not stated in the record upon what ground, or for what purpose, the will was admitted in evidence. It must have been for the purpose of showing that the decedent had no intent or expectation to pay the plaintiff for her services. It surely could not have been intended to show thereby that the plaintiff was paid for her labor by the legacy of $50. We cannot conceive of any fact in issue between the parties which the will would be competent to prove. If the decedent was liable to pay the plaintiff for her labor by acts and declarations amounting to a contract, he could not escape liability, nor exonerate his estate from making payment, by any recital in his will; especially when made after the service was performed. We think the will should not have been admitted in evidence."

The issues therein presented were quite simple and the court clearly explained its position. The facts are far different in the instant case in which the issues are both numerous and complex. There was the question of the existence of certain obligations, payment, services rendered, mental capacity, undue influence and others. The whole relationship between the parties became important. The trial court apparently felt that these instruments might throw some light upon the issues and we agree. At least we cannot say that he exceeded his discretion in admitting such evidence.

IV. In division IV claimants argue that the trial court erred in submitting certain items in the counterclaim to the jury. Although the amount awarded in the counterclaim was considerably less than the total of the disputed items, we have no way of knowing what, if any, consideration was given to the items of which claimants complain. As the case has been reversed and remanded for new trial on other grounds, the question of the sufficiency of the evidence to justify the submission of these items to the jury loses much of its importance. The evidence may be different on new trial. However we feel it might be helpful to the trial court if we comment briefly on claimants' contentions.

The administrator alleged a verbal lease for some years prior to 1949 in which his decedents were to receive cash rent equivalent in value to one half of the grain raised and reasonable cash rent for the pasture and meadow. Administrator sought to prove this allegation by proof that the claimants were in possession during this period and that the "fair rental value" of the occupied land was $1500 per year. In a will dated in 1950 Arthur L. Koch stated that his real estate had been rented by his children for many years and that "final settlement" had not been made and directing the indebtedness be made a charge against each son's share. In 1957 Elmer admitted to Mr. Alfred E. Baldridge that he had not paid any rent for several years.

This evidence is not sufficient to generate a jury question for rent prior to 1949. There is no evidence that it was not paid and the evidence of fair rental value is not material to prove the amount due under an alleged verbal lease in which the amount was based upon the crops raised.

Administrator alleges a crop share lease between 1949 and 1957. There was sufficient evidence from which the jury could have determined the rent was not paid during this period. However, the proof of damages was again based upon fair rental value which admittedly was not the basis upon which the property was rented. Administrator himself introduced evidence indicating in some years poor or no crops were raised. Fair rental value is not the correct measure of damages where a crop

share lease is alleged. Administrator cites no authorities so holding and we have not found any in our research.

We hold there was sufficient evidence of indebtedness in the amount of $1628.80 to make a question for the jury. We do not quarrel with the authorities cited by claimants which hold one who seeks to recover for money loaned has the burden of proving an express or implied contract for the repayment. Wragg v. Rippey, 229 N.W. 237; In re Estate of Green, 227 Iowa 702, 288 N.W. 881. Here the jury could infer such a contract from the circumstances.

The evidence was sufficient to submit as part of the counter-claim a debt to the decedent for corn purchased in the amount of $1600. Howard Koch testified he farmed the home place in 1951 and in the spring of 1952 there were 1000 to 1200 bushels of corn in the premises. Elmer said he had bought it and took it from the crib. The price in May of 1952 was $1.60 to $1.65 per bushel. Elmer received credit for part payment in the payments listed as credits against money due in arriving at a net indebtedness of $1628.80.

V. Claimants ask for a new trial on Count III of the claim which was the claim of Lucille Koch for services rendered, on the ground that the verdict is inadequate and fails to administer substantial justice. We need not cite authorities for the proposition that the trial court has broad discretion in granting or refusing to grant a new trial. Rule 344(f)3.

Although there is evidence of an agreement to pay $12 per day, claimant seeks to recover on the basis of the reasonable worth and value of her services. Evidence was introduced that her services were reasonably worth $12 per day. There is also evidence of part payment, that the condition of Mrs. Koch was not as bad as claimed, along with other factors which the jury could have considered. We do not believe the court exceeded its discretion in failing to grant a new trial on Count III.

We, therefore, conclude this case should be reversed and remanded for new trial on claimants' Count I and administrator's counterclaim. There was no error in the submission of Counts II and III and the judgment thereon is affirmed.— Affirmed in part and reversed in part.

All JUSTICES concur except LARSON and MOORE, JJ., who would remand entire case for retrial.