IN RE ESTATE OF JOHN H. PLUMB, deceased.

EDWIN LEU, claimant-appellee, v. THE SALVATION ARMY, MOODY BIBLE INSTITUTE and ASBURY THEOLOGICAL SEMINARY, objectors-appellants.

No. 51386.

(Reported in 129 N.W.2d 630)

JULY 16, 1964.

Hess, Peters & Sulhoff, of Council Bluffs, for objectors-appellants.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for claimant-appellee.

GARFIELD, C. J.—Edwin Leu, executor of the estate of John H. Plumb, deceased, filed a claim in probate against the estate for $18,000 and interest for alleged services rendered by him from early in 1955 until September 16, 1960, date of Mr. Plumb's death. A temporary executor was appointed who investigated the claim and reported it was his conclusion the claim should be allowed. Three residuary legatees intervened and filed answer denying the claim and pleading payment and the statute of limitations, section 614.1(9), Code, 1962.

When the claim was reached for trial both claimant and intervenors asked the court to adjudicate as law points under rule 105, Rules of Civil Procedure, applicability of the statute of limitations. Claimant also asked an adjudication that the temporary executor's report and alleged allowance of the claim create a prima facie case in favor of the claim. The court ruled the pleadings do not show on their face the claim was barred; also that "the allowance of said claim by the temporary executor is decreed to be prima facie evidence of its validity and justness."

On the trial before court and jury, claimant offered testator's will, the preliminary inheritance tax report and probate inventory, the report of the temporary executor, the order appointing him and some other court files in the estate which need not be mentioned. Claimant then rested. Intervenors then ex-

amined claimant briefly, evidently in support of their defense the claim had been paid, and they rested. Claimant then moved for a directed verdict on the ground the temporary executor's report made a prima facie case for him and there was no substantial evidence to overcome it. The motion was sustained, the claim allowed and the executor directed to pay it. Intervenors have appealed.

I. The first two assigned errors have to do with the defense of the statute of limitations. Intervenors think the trial court ruled they could not interpose this defense and assign the ruling as error. He did not so rule. However, claimant contends —as he may without appealing—it was error not to rule that intervenors may not interpose such a defense and only the personal representative may do so. Since the order appealed from must be reversed on at least three other grounds and the case may be retried, we deem it our duty to say we disagree with claimant's contention.

It is perhaps sufficient answer to the contention that after a hearing on intervenors' petition for leave to intervene, at which the executor (who was claimant) and the temporary executor appeared, the court ordered that intervenors could intervene, file answer and contest the claim. No limitations were placed upon this right. It is not contended this order, which was not ex parte, was erroneous or that intervenors were not entitled to intervene and contest this claim.

However, we are not content to rest our conclusion solely on the ground just suggested. The residuary legatees are the real parties in interest in defense of this claim. They are equitable owners of substantially the entire estate of an estimated net value in excess of $330,000. Incidentally they are all charities to whom testator desired most of his estate to go. We cannot agree that because the temporary executor did not see fit to interpose the defense of the statute of limitations, these legatees may not do so. There is nothing in his report to suggest any consideration was given to his interposing such a defense. So far as shown he was not represented at the hearing on the claim and was not interested in it.

The contention claimant makes at this point is contrary

to our holding in In re Claim of Marjorie Blackman in the Estate of Cora Hunt, deceased, 256 Iowa 1076, 129 N.W.2d 618. We there point out that heirs or beneficiaries under a will should not in fairness be bound by the personal representative's allowance of a claim. Their interests are directly affected by a diminution of the assets and that they are entitled to be heard in opposition to the claim, even though it has been approved by the fiduciary, is well settled.

We do not understand claimant contends that intervenors may not assert the defense of payment. We perceive no sound or logical reason why they may not also assert the bar of limitations.

Claimant does argue that unless resort to the real estate left by decedent is necessary in order to pay claims against the estate, the decision of the personal representative "whether he should raise discretionary affirmative defenses is binding upon the beneficiaries." It is true In re Estate of Baumhover, 151 Iowa 146, 130 N.W. 817, cited by claimant, says an administrator is not necessarily bound to interpose the statute of limitations against a claim he believes to be justly due from the estate. The opinion recognizes the division of authority in other states on this proposition. Whether there had been resort to the Baumhover realty does not appear from the opinion nor the printed record.

In re Estate of Smith, 240 Iowa 499, 514, 515, 36 N.W.2d 815, 824, 8 A. L. R.2d 640, analyzes the Baumhover case and other authorities bearing on the right of interested parties to plead the statute of limitations as a bar to a claim, observes the Baumhover opinion "gives too little information to properly appraise the decision" and points out that since it was filed "the number of courts holding the majority and contrary view has greatly increased, * * *." See Annotation, 8 A. L. R.2d 660.

The Smith decision concludes its discussion of this point by explaining the error of the trial court there in holding that an heir cannot resist the allowance of a claim except for fraud or collusion, citing as authority In re Estate of Douglas, 140 Iowa 603, 117 N.W. 982. This from the Smith opinion has direct application here (page 529 of 240 Iowa, page 831 of 36 N.W.2d): "And it most certainly does not mean that in the initial hearing for the allowance of a claim, as was had in the case at bar, a

creditor, devisee, distributee or other person interested adversely to the claimant cannot base his objections upon the statute of limitations, mistake, payment or other good grounds, but must limit his complaint to the grounds of fraud or collusion. The case cited by the court does not so hold. The claimant has cited none that does. *We have found none holding such a proposition*" (emphasis added).

The hearing which led to the order appealed from here was the initial hearing on the allowance of the claim. The only parties resisting the claim were the intervenors. No authority has come to our attention which would deny them the right to interpose the bar of limitations or, we may add, the defense of payment. Any other holding would be contrary to the spirit, if not the letter, of section 638.10, Code, 1962, which was in force when this case was tried. It provides, "Any person interested in the estate may attend upon the settlement of his [executor's or administrator's] accounts and contest the same."

Code chapter 638, including the quoted section, was repealed by our new Iowa Probate Code, chapter 326, Laws Sixtieth General Assembly, effective January 1, 1964. It may be noted section 122 of this chapter more clearly adopts the view we have expressed. It states, "The acts of the fiduciary without prior approval of court after notice, may be contested by any interested person at or before the entry of the order discharging the fiduciary." Also section 432 of chapter 326 provides that unless the court allows the claim of a personal representative, even though its allowance is recommended by a temporary administrator, it shall be disposed of as a contested claim.

II. Intervenors' second assigned error is the alleged ruling the claim or part thereof was not barred by the statute of limitations. This is not what the court ruled. As stated, the ruling, prior to the trial, was that the pleadings (which doubtless means the claim) do not show on their face the claim was barred. The statute relied upon is section 614.1(9), Code, 1962, which states actions founded on claims for wages must be brought within two years after their causes accrue, except when otherwise specially declared.

The claim alleges it is for services rendered decedent; early

in 1955 decedent, then 91, asked claimant to assist him in operating and managing his four farms; this was to and did consist of keeping records, paying bills, collecting and depositing moneys, leasing the farms, consulting tenants and decedent, inspecting and keeping the premises in repair, buying and selling livestock, many sundry duties, almost daily trips to the farms, decedent's home and his bank, and many phone calls; these services were continuous until decedent's death; in July 1956 decedent asked claimant to oversee his wife's hospitalization and later her funeral, which was done; after Mrs. Plumb died claimant had to arrange for a housekeeper and take over writing all checks; $18,000 is the reasonable value of the services performed, over and above total payments of $2145.

■ Intervenors rely principally on Buckley v. Deegan, 244 Iowa 503, 57 N.W.2d 196, and Roth v. Headlee, 238 Iowa 1340, 1344, 1347, 29 N.W.2d 923, 925–927, which hold the claims there were for "wages" and, as a matter of law, barred by section 614.1(9). The Buckley decision is based on Roth v. Headlee. It must be admitted the present claim bears quite a little resemblance to those in the cited precedents. In Buckley the claimant argued that "wages," as used in the statute, means sums paid menial, manual or mechanical laborers, her services were supervisory and on a higher plane. But we held "wages" primarily means compensation to a hired person for his services.

Claimant cites Cuthbertson v. Harter Post No. 839, V. F. W., 245 Iowa 922, 929, 930, 65 N.W.2d 83, 88, which holds a contractor's claim for 10 percent of the cost of labor and materials, for supervisory services and use of equipment in a building improvement, was not for wages. The decision rests largely on the facts there was no arrangement for periodic payments, it was to be on a percentage basis and the services were supervisory, not manual or menial.

■ The statute of limitations is an affirmative defense which intervenors not only must plead but prove by a preponderance of the evidence. Cuthbertson case and citations at page 928 of 245 Iowa, page 87 of 65 N.W.2d; 54 C. J. S., Limitations of Actions, sections 354, 386; 34 Am. Jur., Limitation of Actions, sections 428, 450.

█ We are not persuaded the court's ruling on this point was error. Certainly the issue of the statute of limitations can be better determined after the evidence is heard than from the face of the claim itself. It is possible too that at the close of the evidence it may appear part, but not all, of the claim is barred —e.g., the part for alleged services at decedent's request prior to and because of Mrs. Plumb's death in 1956.

█ III. Error is assigned in admitting in evidence the temporary executor's report over intervenors' objection of incompetent, irrelevant, immaterial, conclusions and opinions of its author, hearsay, not binding on intervenors and an invasion of the jury's province. This assignment must be sustained. The point is decided, adverse to the trial court's ruling, in the Cora Hunt estate case, supra, 256 Iowa 1076, 129 N.W.2d 618. There is greater reason for excluding the temporary executor's report here than for excluding the executor's report there.

The Hunt executor's report was a statement he believed the claim was fair and just and a recommendation it be allowed without disclosing the basis therefor. Here the report fills 17 pages of the record and states the grounds for the recommendation of allowance. In some detail it recites what claimant told the temporary executor as to his claimed arrangements with decedent and what claimant said he did thereunder; what the farm tenants, former tenants and widow of a deceased tenant told him; his conclusion as to the manner in which claimant kept books of account; contents of income tax returns and bank statements; what the housekeeper and banker told him; the banker's opinion the claim should be allowed; what other farm managers said as to their charge for farm management; what decedent's physician told him, and the temporary executor's reasons for concluding the claim should be allowed in full.

█ It is obvious the report consists largely of hearsay and, to a lesser extent, opinions and conclusions, to which the temporary executor could not testify in court. A statement objectionable as hearsay does not become competent by reducing it to writing. Rubin Bros. Butter & Egg Co. v. Larson, 245 Iowa 741, 745, 63 N.W.2d 908, 910, and citations; Dohse v. Market Mens Mutual Ins. Co., 253 Iowa 1186, 1191, 115 N.W.2d 844, 847.

Nor could the persons with whom the temporary executor talked testify to at least part of what the report recites. Claimant would be incompetent under our dead man statute, Code section 622.4, to testify to any personal transaction or communication between him and decedent. See also In re Estates of Koch, 256 Iowa 396, 404, 127 N.W.2d 571, 576, and citations. Further, what the report says about the documents referred to is not the best evidence.

█ Receiving the report in evidence was an invasion of the jury's province to determine the ultimate fact whether the claim should be allowed. This is a mixed question of law and fact, not properly the subject of opinion testimony. Grismore v. Consolidated Products Co., 232 Iowa 328, 361, 5 N.W.2d 646, 663; In re Estate of Myers, 238 Iowa 1103, 1112, 29 N.W.2d 426, 430; State v. Miller, 254 Iowa 545, 554, 117 N.W.2d 447, 453.

The practical effect of admitting the report in evidence was to deprive intervenors of the valuable right to cross-examine the temporary executor as well as those interviewed by him whose declarations form much of the basis for the report. We are cited to no authority which supports its admission. Of course we do not criticize the temporary executor for making a detailed report.

█ IV. What must be deemed intervenors' principal assigned error is the ruling that the temporary executor's report, without court approval, constituted a prima facie case for claimant. This assignment must also be sustained on the authority of the Cora Hunt estate opinion, supra, 256 Iowa 1076, 129 N.W.2d 618. It cannot be contended a report of a temporary executor on a personal claim of the executor is entitled to greater or different weight from the report of the executor on a claim of a third party.

We need not repeat what is said in the Hunt opinion on this point. No authority is cited here that supports claimant's view, accepted by the trial court, as to the effect of allowance of a claim by the personal representative, without court approval, except the inadvertent dictum in In re Estate of Nicholson, 230 Iowa 1191, 1207, 1208, 300 N.W. 332, 341, "Such orders or allowances have no greater effect than that they are prima facie correct." The words "or allowances", referring back—as they do

—to allowance by an administrator or executor, should not and need not have been included in the statement. The claims in the Nicholson estate had been approved by the court.

■■■■ V. We also sustain the assignment it was error not to submit to the jury the defense of payment. We think there is substantial evidence to support this defense. We reach this conclusion even though the trial court's view as to the effect of the temporary executor's report were to be accepted.

The claim is for personal services over a period of five and one-half years performed for one abundantly able to pay for them at any time demand for payment had been made. No demand or request for payment was ever made although claimant and decedent lived in the same locality and, according to the claim, were in almost daily contact. It is claimed substantially all services were performed before claimant was appointed decedent's guardian and all of them before the guardianship assets were transferred to himself as executor. Evidently the only claim appellee made in the guardianship was for his services during the period thereof for which he received $400.

At intervals covering almost four of the five and one-half years claimant made 16 payments to himself which aggregate $2145. Claimant wrote the checks, payable to himself, on decedent's account without rendering any invoice, account or bill at the time they were issued. The last three payments were $500 each. Another payment of $500 was made to claimant by himself as guardian on September 10, 1960, for farm management. This was at decedent's specific request six days before he died. During the period covered by the claim claimant was selling government bonds of decedent.

On March 31, 1960, a formal written contract apparently prepared by an attorney was made between decedent and his housekeeper under which she was to be paid $99 per month and an additional $3000 at his death if she performed her part of the contract "and first party hereby instructs the executor of his estate to make prompt payment of said amount." The agreement was witnessed by this claimant and another person. Claimant never had a written agreement with decedent regarding his services. This agreement is evidence that decedent,

then 95, five years after claimant alleges he was employed, was meticulous in his business methods.

The estate probate inventory, filed by claimant two and one-half months after decedent's death, estimates total debts of $20,000. Since the claim in question here and that of the housekeeper (for the $3000) exceed this amount, the estimate apparently refers to these two claims and there were no other known debts. The inventory lists a checking account of $3000 and government bonds in excess of $56,000. The farms were unencumbered.

Our conclusion the issue of payment should have been submitted to the jury finds support in Baker v. Davis, 212 Iowa 1249, 1251–1253, 235 N.W. 749; Griffith v. Portlock, 233 Iowa 492, 496, 497, 7 N.W.2d 199, 201; Roth v. Headlee, 238 Iowa 1340, 1347, 1348, 29 N.W.2d 923, 926, 927. The Roth case states, "It is not usual or reasonable for a creditor to permit such a large indebtedness to accumulate or to delay assertion of his claim for such a period."

VI. Intervenors' remaining contentions are it was error not to submit to the jury the reasonableness of the claim and to direct a verdict for the full amount thereof.

Of course it follows from Divisions IV and V hereof it was error to direct the verdict. Upon a retrial the burden will be upon claimant to prove his claim. In re Claim of Marjorie Blackman in the Estate of Cora Hunt, supra, 256 Iowa 1076, 129 N.W.2d 618. This includes the value of his services. Upon the retrial the court will doubtless follow the law as stated herein and in the cited opinion. We have no way of knowing what the evidence will be on the issue of value of the services or other issues.

We will merely repeat what has been said before several times that in the absence of an admission by the adverse party it is not often that one who has the burden on an issue establishes his claim as a matter of law. Also that such a claim as this is not *necessarily* established because the evidence is not denied. Claimant's evidence must still stand the test of credibility. Circumstances showing improbability, unreasonableness or inconsistency may be sufficient to raise a

conflict in the evidence. Roth v. Headlee, supra, 238 Iowa 1340, 1343, 29 N.W.2d 923, 924, and citations; Rhodes v. Rhodes, 251 Iowa 430, 433, 434, 101 N.W.2d 1, 3. See also Kellerhals v. Kallenberger, 251 Iowa 974, 982, 983, 103 N.W.2d 691, 696, and citations.—Reversed and remanded.

All JUSTICES concur except HAYS, J., not sitting, and PETERSON, J., who takes no part.