# IN THE SUPREME COURT OF IOWA

No. 22–0288

Submitted March 30, 2023—Filed May 26, 2023

**IN THE MATTER OF THE ESTATE OF RUTH C. BISIGNANO,** Deceased.

**EXILE BREWING COMPANY, LLC,**

    Appellant,

vs.

**ESTATE OF RUTH C. BISIGNANO,**

    Appellee.

---

**IN THE MATTER OF THE ESTATE OF FRANK J. BISIGNANO,** Deceased.

**EXILE BREWING COMPANY, LLC,**

    Appellant,

vs.

**ESTATE OF FRANK J. BISIGNANO,**

    Appellee.

---

Appeal from the Iowa District Court for Polk County, Craig E. Block, Judge.

A business alleged to have misappropriated a decedent's intellectual property appeals the probate court's reopening of the decedent's and decedent's husband's estates to pursue the misappropriation claim; the Estates cross-appeal the denial of their request for attorney's fees. **AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Kristina J. Kamler (argued) and Robert S. Keith of Engles, Ketcham, Olson & Keith, P.C., Omaha, Nebraska, for appellant.

Scott M. Wadding (argued), Matthew G. Sease, and Delaney J. Kozlowski of Sease & Wadding, Des Moines, for appellees.

**McDERMOTT, Justice.**

The Estates of Ruth Bisignano and her husband Frank Bisignano sued Exile Brewing Company based on the use of Ruth's name and likeness in Exile's promotion and sale of its popular beer called "Ruthie." To enable the estates to pursue these claims, Frank Bisignano's nephew first filed petitions in the probate court to reopen the estates, as both estates had long since closed. The probate court granted both motions to reopen, and the estates filed the civil lawsuit against Exile. Exile sought to intervene in the probate case, filing a motion to vacate the reopening orders. In this appeal, we must decide whether the probate court erred in denying Exile's request to intervene in the probate case and close the Estates.

## I. Ruth Bisignano and Exile's "Ruthie" Beer.

Ruth Bisignano—"Ruthie," as she was professionally known—owned and operated a popular bar in Des Moines throughout the 1950s and '60s called "Ruthie's Lounge." She was famously (or, to some, scandalously) known for her ability to serve beer by balancing two pint glasses on her chest in a bar trick she referred to as the "well-balanced glass of beer." The trick earned her both attention in newspapers across the country and a premium price on drinks— reportedly charging about three times as much as other bars in town. It also earned her some legal trouble, although perhaps of the no-such-thing-as-bad-publicity variety. Ruth was criminally charged several times for performing her serving trick with allegations that included "indecent dress and behavior" and "indecent behavior and running her lounge in a loud, boisterous manner with

the juke box blaring." And in 1955, the IRS came after Ruth for unpaid taxes totaling $44,694, alleging that her beer-balancing trick qualified as entertainment and made her bar subject to the tax on "cabarets." In 1971, she sold her bar and closed the door on her bartending and tavern-operating days.

In 2012, Exile Brewing Company (Exile), taking Ruth and her contributions to the beer and restaurant industry as an inspiration, named one of its craft beers "Ruthie" and used Ruth's image performing her serving trick on bottles, cans, beer taps, and other paraphernalia. Today Ruthie is the best-selling Iowa-made beer in the state. Before it began selling the Ruthie beer, Exile searched for trademarks and products sold under the name "Ruthie," searched for pictures of Ruth, and searched for children, an estate, or a trust for her. Exile alleges that the search came up empty, so it began selling the beer using the name "Ruthie" and Ruth's likeness. Exile applied for a federal trademark for "RUTHIE" in 2019, which was granted in 2021.

## II. Reopening the Estates.

When Ruth died intestate in 1993, her husband Frank Bisignano served as the administrator of her estate. The list of assets on the final report and inventory for her estate didn't include the name "Ruthie" or Ruth's name and likeness as property. Ruth's estate was closed in 1993.

Frank died intestate three years later. His niece, Andrea Huntsman, served as the administrator of Frank's estate. The list of assets on the final report and inventory for his estate likewise didn't include the name "Ruthie" or Ruth's name and likeness as property. The final report listed Frank's heirs as his three

then-living siblings: Barbara Hamand, Rose Medici, and Alfonso Bisignano. Frank's estate was closed in 1999.

Fred Huntsman is Frank Bisignano's nephew and the son of Frank's deceased sister Barbara Hamand. In March 2020, Huntsman filed a petition to reopen Frank's estate, alleging that he "hired an attorney to investigate and pursue potential claims against a corporation" that, if successful, would benefit Frank's estate. The probate court promptly granted the motion to reopen Frank's estate and appointed Huntsman as administrator. In September 2020, Huntsman filed a petition to reopen Ruth's estate on the same grounds. The probate court promptly granted the motion to reopen Ruth's estate, too, and appointed Huntsman as administrator.

**III. The Estates' Civil Lawsuit and Exile's Motion to Vacate and Close the Estates.**

In June 2020, Huntsman, as administrator of Frank's estate, filed a lawsuit in Iowa district court against Exile alleging common law appropriation of Ruth's name and likeness, appropriation of the commercial value of Ruth's identity and infringement of the right of publicity, common law misappropriation of trade values, consumer fraud under Iowa Code chapter 714H, common law deceptive marketing, and common law trade and service mark infringement. Exile moved to dismiss the lawsuit, arguing, among other things, that Frank's estate lacked standing, the court lacked jurisdiction, and a statute of limitations violation. The district court denied the motion in August 2020. Exile filed an answer and affirmative defenses to the petition a month later, and the litigation moved forward.

Exile argued to the district court in the motion to dismiss proceedings that Ruth's estate, not Frank's, was the appropriate plaintiff in the civil action. The petition to reopen Ruth's estate in probate court (in September 2020) soon followed. Frank's estate then moved to add Ruth's estate as a plaintiff in the civil case, which the district court granted. In June 2021, the estates moved for partial summary judgment on certain claims. Exile resisted and, in August, filed a cross-motion for summary judgment that the estates resisted.

While those summary judgment motions were pending in the civil case, Exile filed a motion in the probate court to vacate, dismiss, and close both estates. Exile, describing itself as an "interested party" in the estates, argued that the probate court lacked jurisdiction to reopen the estates under Iowa Code section 633.489, that Huntsman lacked standing to serve as the administrator, and that any intellectual property rights that the estates could have in Ruth's image or likeness had been waived. These arguments were identical to some of the arguments that Exile was making in the civil lawsuit. The estates resisted, arguing that the probate court must strike Exile's motion because it was not an interested party in the estates. The estates argued, in the alternative, that the probate court should reject Exile's arguments on the merits because the reopening orders complied with section 633.489 and there had been no waiver of Ruth's intellectual property rights allowing Exile's use.

In November, the probate court denied Exile's motion. The probate court held that Exile had no right to intervene in the probate proceedings and instead was an interloper in the case. The probate court thus struck Exile's motion to

vacate, dismiss, and close the estates. The probate court further determined that even if Exile could intervene, the potential claims against Exile described in Huntsman's petition to reopen were "new property" that authorized reopening the estates under Iowa Code section 633.489. The probate court didn't decide whether Ruth's intellectual property passed to her heirs or into the public domain, specifically leaving the issue for resolution in the civil lawsuit. Exile filed a motion to reconsider, which the probate court denied. The probate court also denied the estates' application for attorney's fees.

In January 2022, the district court ruled on the summary judgment motions. It took no action on Exile's standing and jurisdiction arguments, deferring instead to the probate court's ruling that the estates were properly reopened. The district court went on to deny both sides' summary judgment motions. Soon thereafter, the estates successfully moved to amend their petition in the civil lawsuit to replace their common law claim for trade and service mark infringement with a claim for deceptive advertising and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a). In April 2022, Exile removed the civil lawsuit to federal court based on federal question jurisdiction.

Exile appealed the probate court's ruling. The estates cross-appealed the probate court's denial of their application for attorney's fees. We've consolidated Ruth's and Frank's probate cases for appeal based on the identical issues presented.

**IV. Exile's Intervention in the Probate Estates.**

We begin with the probate court's threshold determination that Exile is an interloper with no ability to challenge the estates' reopening. As the probate court noted, the probate code includes no provisions that address a party's intervention in a probate proceeding. But Iowa Code section 633.34 provides that unless otherwise stated, all actions triable in probate apply the Iowa Rules of Civil Procedure. Rule 1.407 provides for two ways to intervene in a case: intervention as a matter of right and permissive intervention. Iowa R. Civ. P. 1.407(1), (2).

The rule on intervention as of right (as relevant here) states that "anyone *shall* be permitted to intervene in an action . . . [w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action" and "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest" unless the interest is otherwise adequately protected by another party. *Id.* r. 1.407(1)(*b*) (emphasis added).

The rule on permissive intervention (as relevant here) states that "anyone *may* be permitted to intervene in an action . . . [w]hen an applicant's claim or defense and the main action have a question of law or fact in common." *Id.* r. 1.407(2)(*b*) (emphasis added). The permissive intervention subrule concludes with this: "In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* r. 1.407(2) (unnumbered paragraph). A later subrule guides

courts on its consideration of permissive intervention applications, stating that courts shall consider "and grant or deny the application as the circumstances require." *Id.* r. 1.407(4).

In *In re Estate of DeVoss*, we noted the confusion that surrounds the appellate standard of review from denials of intervention because of the two different types of intervention. 474 N.W.2d 539, 541 (Iowa 1991). In *DeVoss*, two heirs appealed the district court's denial of their attempt to intervene as of right in a probate case. *Id.* at 542. We affirmed the district court, determining that the heirs' interest "was too remote . . . to entitle them to intervention." *Id.* On the standard of review, we remarked that most intervention appeals will "revolve around an evaluation of the 'interest' claimed by the party seeking to intervene," and stated that review thus should be "on error, with some deference given to the district court's discretion." *Id.* at 541.

**A. Intervention as of Right.**

Exile argues that it was entitled to intervention as of right because it seeks to "defin[e] the property rights that Huntsman actually inherited through intestate succession" and to "ensur[e] that Huntsman is not granted, through the probate proceedings, rights that encroach upon the trademark rights that Exile was already vested with" through its use and registration of the "Ruthie" trademark.

But neither ground establishes—as required by the rule—that Exile would be left "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Iowa R. Civ. P.

1.407(1)(*b*). The disposition of the probate matter will not "impair or impede" Exile's ability to protect the property interest that they assert. The property rights dispute between the estates and Exile is the subject of a separate civil lawsuit now pending in federal court. Exile is entitled to pursue—and has been pursuing, for several years now—its claims and defenses in the civil litigation to protect its alleged property interest. The probate court did not rule on the merits of Exile's property claims, leaving Exile free to address those claims in the civil lawsuit.

Further, Exile is ill-suited to challenge the probate court's appointment of Huntsman as a special administrator of these estates. An "interested person" in probate is generally "one whose 'interests are directly affected by a *diminution* of the [estate] assets.' " *In re Est. of Boyd*, 634 N.W.2d 630, 638–39 (Iowa 2001) (alteration in original) (emphasis added) (quoting *In re Est. of Plumb*, 129 N.W.2d 630, 632–33 (Iowa 1964)). Exile makes no claim that it would suffer by a diminution of assets in the estate; indeed, the opposite is true since Exile argues it will suffer if the court doesn't *prevent* an asset (the cause of action to enforce Ruth's intellectual property rights) from entering the estates. Exile is not an heir at law, a beneficiary under any testamentary instrument, a creditor of the estates or the decedents, or any other claimant seeking estate assets. Rather, Exile's role is merely that of a potential *debtor* to the estates if it's held liable in the civil lawsuit for misappropriating Ruth's name or likeness. *Cf. In re Troester's Est.*, 331 N.W.2d 123, 127 (Iowa 1983) (noting the district court's determination "that appellants as possible debtors of the estate were not interested parties to the estate proceedings and could not intervene in the proceedings"). The probate

court didn't rule that Huntsman inherited Ruth's intellectual property rights. Exile is free to raise in the civil lawsuit whether there are any name, image, and likeness rights and whether any such rights are inheritable.

That Exile's interest is only a *potential* one at this point is another strike against intervention. Contingent interests, we have said, "are insufficient to allow intervention by right." *DeVoss*, 474 N.W.2d at 542. Exile's interest in the estates depends on its property interest in Ruth's image and likeness, and that interest depends on the outcome of the trademark and civil litigation matters that are underway. We find no error in the district court's determination that Exile failed to establish that it was an interested party entitled to intervention as of right.

**B. Permissive Intervention.**

Exile also argues that it was entitled to permissive intervention. We will afford a district court a relatively greater measure of deference in our review of a permissive intervention decision considering that the court "exercis[es] its *discretion*" in deciding whether an applicant "*may be* permitted to intervene" under the permissive intervention rule. *See* Iowa R. Civ. P. 1.407(2) (emphases added). As Judge Friendly once noted about the similarly-worded federal rule, "[A] denial of permissive intervention has virtually never been reversed." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 991 n.19 (2d Cir. 1984).

In analyzing whether Exile's "claim or defense" involves a common question of law or fact in the probate proceeding, Iowa R. Civ. P. 1.407(2)(*b*), we return to the discussion of Exile's role as potential debtor only and its lack of any interest in these estates. The petition for estate reopening is an equitable

action, while claims for misappropriation of a person's name and likeness and claims to quiet title in intellectual property are legal actions. The narrow scope of a petition to reopen an estate presents no overlapping issue with the resolution of a claim for misappropriation of a person's name and likeness or to quiet title in intellectual property. Stated simply, Exile cannot show that it "will gain or lose by the direct legal operation and effect of the judgment" to reopen the Estates. *DeVoss*, 474 N.W.2d at 542 (quoting *Faircloth v. Mr. Bos. Distiller Corp.*, 245 So. 2d 240, 244 (Fla. 1970), *overruled in part on other grounds by Nat'l Distrib. Co. v. Off. of Comptroller*, 523 So. 2d 156, 158 (Fla. 1988)). Whether Exile gains or loses will be determined through the resolution of the claims in the civil lawsuit, not by the probate court's order to reopen the estates. Again, Exile is free to raise in the civil lawsuit whether any name, image, and likeness rights existed or still exist and, if so, whether those rights are inheritable.

In considering applications for permissive intervention, the rule directs that courts "grant or deny the application as the circumstances require." Iowa R. Civ. P. 1.407(4). The probate court found no circumstance that would require permitting Exile to intervene and, on the contrary, determined that intervention would constitute outright interference by an interloper. *See Cooper v. Erickson*, 239 N.W. 87, 89 (Iowa 1931) ("What the intervener in fact does ask is independent relief in what really amounts to an independent action. That does not constitute the intervener a party as such, but makes of him a mere interloper."); *Mass. Bonding & Ins. v. Novotny*, 202 N.W. 588, 590 (Iowa 1925) (stating that a person without a legal basis to intervene "is considered a mere

'interloper' who acquires no rights by his unauthorized interference"). We find no error in the probate court's denial of Exile's request for permissive intervention.

Because we affirm the district court's judgment on the threshold issue denying Exile's attempt to intervene in the matter and striking Exile's motion to vacate, dismiss, and close the estates, we need not address the merits of the other issues raised in that motion.

**V. The Estates' Request for Attorney's Fees.**

The estates cross-appeal the probate court's denial of their request for attorney's fees. As a basis for their request, they recite Exile's statement in the civil action that Ruth's estate was the proper plaintiff to bring the claim, only to later move to vacate the order reopening Ruth's estate after her estate was added as a plaintiff. The estates also argue that Exile pursues a frivolous end run of the district court's summary judgment ruling by repackaging previously-rejected arguments in this appeal.

The estates ask us to enforce rule 1.413, which permits an award of attorney's fees as a sanction for filings "interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation." Iowa R. Civ. P. 1.413(1). The rule states that by signing a filing, the lawyer certifies "to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Id.* Compliance with the rule is based on "an objective, not subjective, standard of reasonableness under the circumstances." *Barnhill v.*

*Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009). We thus review a district court's decision regarding the imposition of sanctions under rule 1.413 for abuse of discretion and, on review, will correct erroneous applications of the law. *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020).

Imposing a fee-shifting sanction is a rare exception to our general rule that losing litigants don't pay the victor's attorney's fees. *In re Guardianship of Radda*, 955 N.W.2d 203, 214–15 (Iowa 2021). We consider a variety of factors in evaluating compliance with the rule, including the time available to investigate and research facts, the complexity of factual and legal issues, the clarity or ambiguity of existing law, and the plausibility of the legal positions asserted. *Retterath*, 938 N.W.2d at 710. Arguments "made in good faith" weigh against a sanction. *Id.* In *In re Guardianship of Radda*, for instance, we determined that even though a party presented questions of first impression that lacked merit, the arguments weren't frivolous within the meaning of rule 1.413(1). 955 N.W.2d at 215. In rejecting the estates' request to impose a fee-shifting sanction against Exile, the probate court noted that Exile supported its arguments with statutes, caselaw, and facts, and found nothing facetious or frivolous about Exile's motion.

The primary purpose of sanctions under rule 1.413(1) is to deter frivolous litigation, not to compensate the winning side. *First Am. Bank v. Fobian Farms, Inc.*, 906 N.W.2d 736, 745 (Iowa 2018). Exile, in the probate court's view, had a reasonable basis for the arguments it presented, and we agree. Exile engaged in no misconduct warranting a sanction, and we find no error in the probate court's refusal to sanction Exile with a fee-shifting award in this case.

**VI. Conclusion.**

Our holding in this appeal rests exclusively on the probate court's decision to reject Exile's attempt to intervene and to strike Exile's motion to vacate, dismiss, and close. We advance no views and take no position on the existence or inheritability of Ruth's name, image, and likeness rights. Exile's only connection to the probate proceedings is as a potential debtor to the estates. We will not turn the probate court's simple reopening of the estates into a second litigation over whether or to whom the potential debt is owed where Exile has no other connection to the estates. Exile has the opportunity to raise its defenses in the civil lawsuit to determine whether it is in fact a debtor.

We affirm the probate court's grant of the estates' motion to strike Exile's motion to dismiss, vacate, and close, and affirm the related denial of Exile's motion to intervene. We also affirm the probate court's denial of the estates' request for attorney's fees.

**AFFIRMED.**