H. H. RICHARDS V. JEWETT BROTHERS & COMPANY *et al* Appellants.

Suit for Wrongful Attachment: PROBABLE CAUSE AND MALICE: 1 EVIDENCE. In an action for damages for wrongful suing out of a writ of attachment, not based on the bond, the plaintiff must prove both malice and want of probable cause. Evidence considered and held insufficient to support the action.

Unrecorded Mortgage: RIGHTS OF SUBSEQUENT CREDITORS. A 2 mortgage on a stock of goods withheld from record by agreement is fraudulent as to creditors of the mortgagor, without notice, for goods sold after its execution.

*Appeal from O'Brien District Court.*—HON. G. W. WAKEFIELD, Judge.

SATURDAY, DECEMBER 20, 1902.

ACTION at law to recover damages for malicious attachment. Verdict and judgment for the plaintiff. The defendants appeal.—*Reversed.*

*E. C. Herrick* for appellants.

*Milt H. Allen* for appellee.

SHERWIN, J.—This is not the statutory action upon the attachment bond, but an independent one, alleging want of probable cause and malice; and, to entitle the 1. WRONGFUL plaintiff to a recovery, he must establish attachment: probable both of these propositions. *Tallant v. Gas-* cause and malice: *light Co.*, 36 Iowa, 262; *Carraher v. Allen,* evidence. 112 Iowa, 168; *Frantz v. Hanford,* 87 Iowa, 469. In the fall of 1897 the plaintiff bought a small stock of goods at a public sale, paying about one-half of the price in cash. He opened a store in Sheldon, and put it in charge of another, while he continued in his vocation as

a traveling salesman for a Chicago wholesale house; spending only a small portion of his time in Sheldon, but being there generally over Sunday. On the 24th of December he placed his store and business in charge of a lawyer living in Sheldon, and left for a social and business visit in Wisconsin and Illinois. At this time he owed $500 on the purchase price of his original stock of goods, and from $800 to $1,000 to his general creditors, among whom were these defendants. About the middle of December the stock he then had invoiced about $2,000. The attachment was levied on the 3d of January following, and on the 10th of that month the stock invoiced $1,300. Between the 13th of October and the 24th of December, 1897, the defendants sold and delivered to the plaintiff goods of the aggregate value of $177.20, and had credited him on the account $1.82 for goods and empty boxes returned. The balance of the account was due and unpaid at the time of the attachment. The defendants had a branch wholesale house in Sheldon, in charge of a manager. They also kept a creditman there whose business and duty it was to know the financial standing and condition of their customers, and to look after their accounts; and the evidence shows that Mr. Clay, the defendants' creditman, knew approximately the amount of the plaintiff's indebtedness, and knew who some of his creditors were, other than the defendants. Soon after the plaintiff left, the defendants learned that a lawyer was in charge of his store, and, upon investigation, were told that the plaintiff had left for a visit, and that he expected to return in the course of a few days. On the 22d of December the owner of the claim for unpaid purchase money was given a mortgage on the plaintiff's entire stock to secure his claim, with the understanding between them that it was to be withheld from record until the plaintiff returned from his visit unless it became necessary to sooner record it to protect the mortgagee; and by agreement the

mortg ge was left in the hands of the lawyer, who was to have and did have charge of the stock during the plaintiff's absence. The day after the plaintiff left, the party in charge of the store denied the execution of any mortgag . During the ten days following, the defendants were watching the situation closely, and attempting to get some money or goods to apply on their claim, or some security therefor, but without material success. The plaintiff did not return, and though his agent was in communication with him and knew of the efforts of the defendants, and their anxiety as to their claim, the defendants had no word from him, and knew nothing of his whereabouts, except that he was somewhere in either Wisconsin or Illinois. That he was not attending to his business as a traveling salesman, they did know. The defendants' attorney had taken part in the conversation with the plaintiff's agent, and in the efforts to adjust the claim, in fact, he had been the active party in charge thereof, and was fully advised as to the entire situation, and of all the facts connected therewith,—more fully, indeed, than were the defendants; and he advised the defendants that they had good and sufficient grounds for an attachment, under the statute. They did not act immediately on this advice, however, but waited until about ten o'clock on the night of January 3d, when they informed the plaintiff's agent that they would have to attach, whereupon he told them to go ahead, and that there was a mortgage on the stock. The writ was issued and levied soon after, and the mortgage was taken to Primghar by the agent, and recorded at 1:30 o'clock in the morning of the 4th of January.

After a very careful examination of the record, we reach the conclusion that the plaintiff has wholly failed to prove any mali e, if, indeed, he has not also failed to prove want of probable cause. The defendants waited long and patiently for the return of the plaintiff. They

made many efforts, indicating a desire upon their part to avoid causing the plaintiff trouble or annoyance. They finally acted on the advice of counsel who was in possession of all the facts and circumstances in detail, and absolutely nothing is shown tending to prove bad faith or malice, and for this reason we think the verdict should have been directed for the defendants. *Mesher v. Iddings*, 72 Iowa, 553.

The defendants asked an instruction to the effect that where a chattel mortgage is given upon a stock of merchandise, with the understanding or agreement that it 3. UNRECORD- shall be withheld from record for a specific ED mort- time, and it is so withheld, it is fraudulent gage; rights of subse- as to one who sells goods to the mortgagor quent cred- itors, after it was given, and before it was recorded, without notice thereof. The request announced the rule in this state, and was supported by the evidence, for a part of the bill for which the defendants attached was sold to the plaintiff after the mortgage was given, and before they had either actual or constructive notice thereof. *Goll & Frank Co. v. Miller*, 87 Iowa, 426; *Lemert v. Mc-Kibben*, 91 Iowa, 345.

It was prejudicial error to permit the plaintiff to testify to the credit given him by other houses. The defendants were unduly restricted in their cross-examination of the plaintiff. He should have been required to answer when the correspondence in question was destroyed, and whether he was pressed for the payment of claims before he left Sheldon, on the 24th of December. The testimony of Clay, on plaintiff's rebuttal, as to what disposition was made of money collected on accounts, was immaterial.

The judgment is REVERSED.