JAMES DAWSON *vs.* B. JOHN BERTOLINI, *d. b. a.* SLATER CAB COMPANY.

JULY 20, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action of trespass to recover damages for personal injuries alleged to have been caused by the defendant in the operation of an automobile. Although the writ is in trespass, the gist of the action as pleaded and tried is negligence. The defendant filed a special plea of contributory negligence in addition to the general issue. The plaintiff, by his replication, joined issue on defendant's special plea.

The case was tried to a jury in the superior court and resulted in a verdict for the plaintiff in the sum of $7500. The defendant moved for a new trial on the grounds that the verdict was against the evidence and that the damages were excessive. This motion was denied by the trial justice. The case is before us on defendant's exception to this decision.

It appears in evidence that the accident happened on Barton street near its intersection with Dexter street in the city of Pawtucket, about 5 p. m., on July 27, 1942. Barton street runs approximately east and west, while Dexter street runs approximately north and south. Both streets are about 30 feet wide between curbs. There is a gasoline station on the northwesterly corner and a house of two or more stories on the northeasterly corner.

We summarize the testimony for the plaintiff as follows: The plaintiff testified that, while his automobile was being refueled at the gasoline station at the northwesterly corner of Dexter and Barton streets, he started to cross the latter

street at a point about 25 or 30 feet westerly from that corner; that he was going to buy cigarettes at a variety store on the southerly side of Barton street; that before he started to cross the street he looked both ways and saw a bus stopped near the corner; that when he was about in the middle of the street, the bus passed behind him; that at that time he again looked both ways and saw no traffic; that he then proceeded to cross the southerly half of the street and was within three to six feet of its southerly curb when he saw the defendant's automobile about 3 feet away, coming "pretty fast" towards him from the intersection; that, in this situation, all he could do was to put up his hands to protect his head; that the right front fender of the automobile struck him and violently threw him to the ground. We will refer later in this opinion to his injuries.

William H. Booth, a cab driver, testified that he saw the accident from a projecting bay window of his home, which is on the second floor of the house on the northeasterly corner of the two streets; that defendant's automobile made a "short turn" from Dexter street into Barton street, at a speed of about 30 to 32 miles an hour; that, as the automobile came into Barton street, it was "Right up near the curb", that is, the southerly curb of that street; and that the plaintiff, who by that time had crossed about 25 feet of the street, was struck by the right front of the automobile and thrown to the ground.

William J. Lynch, an attendant at the gasoline station, testified that he did not see the accident before his attention was attracted to it by a loud noise; that he looked in that direction and saw defendant's automobile stopped on the opposite side of Barton street; and that the plaintiff was then on the ground in front of the automobile. Although he did not describe in words the location of the plaintiff on the street, he was permitted to indicate that place by a mark on a plat, which is in evidence. The point so marked is apparently 7 or 8 feet from the southerly curb of Barton street.

The testimony of the defendant on the issue of liability is, in substance, as follows: The defendant testified that he was licensed to operate the automobile as a public car, but not as a cab, and that he used the name Slater Cab Company for business purposes. The driver of the car was James O. Crafford, Jr., who testified by deposition as he was in the army at the time of trial. In direct examination he testified that he was driving two passengers, a lady and a young girl, to their destination; that he made a left turn from Dexter street into Barton street at a speed of about 5 miles an hour; that just as he was making the turn he saw the plaintiff "right in front of the car which was too late to stop"; that the plaintiff was very close to the automobile when he saw him, not more than "three feet"; that the plaintiff was then "just in Barton Street" from Dexter street, and "just about the middle of the road;" that he, Crafford, put on the brakes "just about the same time as I hit him"; that the plaintiff was struck by the front of the automobile, more toward "the left front fender"; and that the automobile went about 6 feet before it stopped, with the plaintiff on the ground in front of it. Crafford's cross-examination is substantially to the same effect. He was the only witness for the defendant on the issue of liability, as the passengers could not be located.

There is ample evidence to establish defendant's liability. Crafford's testimony alone is sufficient to support a verdict for the plaintiff on that issue. It is clear from such testimony that he drove the automobile into Barton street in disregard of a statutory rule of the road—G. L. 1938, chap. 88, §2—which requires that the operator of a motor vehicle shall pass to the right of the intersection of the middle lines of intersecting highways before turning to the left; and that, if he had observed this rule, there was nothing to prevent him from driving on the northerly half of Barton street, which the plaintiff had already crossed. It is well established with us that the violation of a rule of the road is a material fact for the jury to consider along with

all other evidence bearing on the question of negligence. *Fonceca* v. *Voyer*, 57 R. I. 224, 232. In the absence of notice to the contrary, a person using the highway has a right to assume that the rules of the road, which are for the common safety, will be obeyed. *Andrews* v. *Penna Charcoal Co.*, 55 R. I. 215, 221.

When we consider the testimony of Lynch in conjunction with that of Crafford and completely disregard the testimony of the plaintiff, as the defendant would have us do because of some alleged falsity in the plaintiff's testimony on the issue of damages, the conclusion is almost inescapable that, when the plaintiff was well across Barton street, Crafford entered that street in a manner that was inconsistent with a proper observance both of the law of the road and of existing conditions. There is nothing in the record before us which tends to show that the plaintiff was not in the exercise of due care. Even on this restricted view of the evidence, we find no reason to disturb the jury's verdict and its approval by the trial justice on the issue of liability.

We will now turn to the question of damages. The medical evidence is clear that the plaintiff suffered severe injuries as a result of the accident and that, at the time of the trial, there was definite probability that he would still require further substantial treatment before his complete recovery could reasonably be expected. Plaintiff's principal injuries were compound, comminuted fractures of both bones of the left leg, about five and one-half inches below the knee joint, and a fracture of one bone of the right leg near the ankle. It is unnecessary for us to refer with any particularity to the treatment which he received for these injuries at the hospital where he was taken by Crafford immediately following the accident. The hospital records show that both legs were put in casts, the one on the left leg extending from "toe to groin."

The hospital records further show that the plaintiff was released from that institution on August 22, 1942. There-

after he continued to be treated and, at the time of the trial, was still being treated by the same orthopedic surgeon who had attended him at the hospital. On February 8, 1943, the plaintiff was readmitted to the hospital because of the nonunion of the tibial fracture of his left leg and a "bone graft" operation done. When not in bed, the plaintiff used two crutches until August 13, 1943, at which time he was allowed to discard one of them.

The medical evidence shows that the plaintiff has recovered from the injury to his right leg, but not from the injury to his left leg, the bones of which, according to his doctor "are still in the process of union or uniting. They are not completely united as shown by the X-ray . . . whether this man will need some more operating on his leg, I can't say. It's possible . . . . Every once in a while we have a bone in people that is slow in uniting. They don't form bone for some reason or other. We don't know why. Mr. Dawson seems to be one of these patients." This doctor also testified that, in any event, the plaintiff would require further treatment for an indeterminate period, and that he, the doctor, could not say when the plaintiff, who still needed the aid of a crutch at the time of the trial in November 1943, would be able to return to work at his trade of machinist.

An orthopedic surgeon, who was called as a witness for the defendant, testified that he examined the plaintiff on June 30, 1943 and then found that his left leg was "not completely solid because there was a slight give or spring in the fractured area and where the bone graft had been done." His prognosis was that "a good functional leg is to be expected." In reply to a question by the trial justice as to the period of time which such statement intended to express, the doctor answered that the plaintiff, being a machinist, would be totally disabled "until union of the fracture of the left tibia was solid enough to allow discarding the crutches, and full weight bearing. When this will occur, no one can predict with certainty. Possibly from two to

six months. That was from June 30, 1943. I think before there should be any further prediction on my part that another examination of the leg should be made and also a re-checking of the recent X-rays." The defendant did not ask for another examination of the plaintiff by this doctor.

The evidence relating to the plaintiff's loss of wages is sharply conflicting. The plaintiff, in substance, testified that at the time of the accident he was employed as a machinist at Howard & Bullough; that he had worked there, on and off, for twenty-two years and continuously for almost a year prior to the accident; that he had not worked on the day of the accident and for a few days prior thereto because of a change in tools for war production; and that he earned $45 a week on the average. Zachariah Holden, a production superintendent for Howard & Bullough, testified that the plaintiff had worked under his supervision for some time prior to the day of the accident; that on that day and for a few days previous thereto, the plaintiff had not worked because of a change of machinery for war work; and that the plaintiff's job was there for him when the "change-over" was made.

In contradiction of this testimony, the defendant produced the pay roll clerk at Howard & Bullough, who, aided by pay roll cards which are in evidence, testified that the plaintiff worked there for very short periods in 1924 and 1927; that he returned to work on March 11, 1941, following which date there was a period of time during which "he was simply laid off and then came back June 9, 1942 and left of his own accord June 16, 1942; that that he did not again work there after the last-mentioned date.

In view of such conflicting evidence, the defendant contends that because the testimony of the plaintiff is so "willfully distorted or intentionally false", the maxim "false in one thing, false in everything" entitles it to a new trial on all issues. We cannot give the maxim any such force in the circumstances of this case. The maxim is not a rule of the

law of evidence; it is merely an aid in weighing and sifting of evidence. *Dupraw* v. *Dupraw,* 69 R. I. 144.

The record before us shows that defendant's counsel argued this aspect of the case to the jury, and that the matter was again brought to their attention by the court in the charge. No requests to charge or for a special finding were made by the defendant. In this situation we cannot speculate as to what weight, if any, the jury gave to this isolated instance of alleged willful distortion of testimony by the plaintiff in arriving at their general verdict. In the absence of any showing to the contrary, we must assume that the jury followed the instruction of the court.

The two following cases upon which the defendant relies on this point are clearly distinguishable from the instant case. In *Hall & Cole, Inc.* v. *Di Blasi & Gelardi Co.,* 127 A. (R. I.) 565, where the facts are meagerly stated, the trial justice *granted* a new trial on the ground that, in his judgment, the plaintiff had been the victim of a successful attempt at evasion and deception. This court, without discussion, approved that decision. In the present case, the trial justice, after a fair consideration of all the evidence, *denied* defendant's motion for a new trial. In *Candelore* v. *Glauser,* 140 A. (Pa.) 525, the supreme court of Pennsylvania ordered a new trial as it appeared by incontrovertible evidence, obtained after trial, that the verdict was rendered or materially enhanced because of plaintiff's perjury. In the instant case the trial justice found, in effect, that the verdict was not so rendered or affected and we find no reason to disagree with that conclusion. We therefore find defendant's contention under consideration without merit.

The defendant next contends that the damages are grossly excessive. The verdict of the jury, both as to liability and damages, was approved by the trial justice, who, in his rescript says that such verdict was "not prompted or influenced by prejudice or passion." While the amount fixed by the jury and approved by the trial justice may be

liberal, it is not grossly excessive. In the circumstances we are not warranted in ordering a remittitur.

The defendant's exception to the denial of his motion for a new trial is overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Walter J. Hennessey, Joseph Janas,* for plaintiff.
*Henry M. Boss,* for defendant.