**HAWKEYE SPECIALTY CO., Appellee,**

**v.**

**The BENDIX CORPORATION, Appellant.**

**No. 52956.**

Supreme Court of Iowa.

July 18, 1968.

Doerr, Dower & Rehling, Davenport, for appellant.

William T. Evans, Davenport, for appellee.

MOORE, Justice.

On July 28, 1966 plaintiff delivered to defendant 250 precision stainless steel square headed bolts for a chemical processing known in the trade as passivation. Plaintiff had contracted with the United States Government to manufacture the bolts in accordance with certain government standards including passivation. When defendant returned them they were smaller, pitted, dark, the threads rounded and useless. Plaintiff's petition alleges said processing when performed in accordance with proper standards causes no change in the size of the processed material and that its loss of $1112.50 was due to defendant's negligence. Defendant counterclaimed for $17.85 for services rendered.

Trial to the court resulted in judgment for plaintiff for the amount of its claim and denial of the counterclaim. Defendant has appealed from the judgment for plaintiff. We affirm.

The record discloses passivation is a process whereby metal parts are immersed in a warm solution of nitric acid and water. Sometimes sodium dichromate or inhibitors are also included in the solution. It is a highly technical process which requires careful watching to avoid damage to the metal. Proper passivation results in coating the metal with a transparent film which serves as a deterrent to corrosion and discoloration.

Prior to July 28 the bolts were machined partly by plaintiff and partly by a third party not material to this litigation. Fol-lowing the machining plaintiff's sole owner, Victor C. Johnson, measured the bolts with government approved gauges to ascertain whether they conformed with contract specifications. After determining they conformed plaintiff sent the parts to a subcontractor, Donohoo Steel Company, for a heat treatment called for in the contract. The heat treatment served to harden the steel. Johnson thereafter again checked the bolts for size and found them correct.

Johnson does no passivation and does not know what is involved in the process. Therefore he took the bolts to Mr. Boyer of Rock Island Plating Company who after testing a sample informed Johnson he was not equipped to passivate the bolts.

The United States Army Ordnance expeditor then arranged for defendant to do the job. Johnson took the parts to Mr. Baker, a graduate chemist in defendant's employ. Baker's special fields were electroplating and electrochemistry which he utilized in the metallurgical laboratory. Johnson testified he informed Baker he had previously taken the bolts to Rock Island Plating and that company was unable to do the work. Baker made no inquiry about heat treatment of the bolts or the reason why Rock Island was unable to do the job. Baker stated defendant company was experienced in the process and professed no doubt to plaintiff the bolts could be properly passivated.

Baker delegated the job to Richard Keltner, an employee in defendant's metal finishing department with twelve years experience in passivation. Keltner passivated four or five bolts as a test run. Noticing a peculiar reaction manifested by a dark color he asked Baker for advice relative to proceeding with the entire lot. Receiving the go ahead from Baker, Keltner placed the entire lot into the solution and removed them about twenty minutes later.

When plaintiff received the passivated bolts back from defendant he discovered they were so pitted and shrunken as to make them worthless under his contract with the government. This is admitted by defendant.

Baker testified in his opinion unsuccessful passivation was due to improper heat treatment of the bolts before they were received by defendant company. Prior to passivating the bolts defendant's employees made neither of the two well known tests to determine whether the parts had been properly heat treated. Baker testified he "assumed" the heat treatment had been properly done.

Wilbur McKay testified for plaintiff in its case in chief. He testified he is an electroplater with 10 to 15 years experience in the passivation process and that he passivates 50,000 parts a year for one of his three accounts. He testified without contradiction it was common, accepted practice in the industry to place only one part of a lot in the solution as a test in order not to ruin the entire lot. He stated he sometimes found it necessary to use inhibitors. He always observed each process very closely and opined if the damage to the bolts had occurred in his shop the only explanation would have been carelessness on his part.

The trial court's findings include: "The Court finds that the assumption of Keltner and Baker that the pieces were properly heat treated before delivery to Bendix, was *not* a valid assumption. These men knew from the sample parts that something was wrong. Keltner was particularly aware of the dark color. Keltner's consultation with Baker indicates an awareness of a possibility of trouble. Adequate testing was done. The result of the tests confirmed the judgment of these men that there was something wrong with the parts. As a result of the tests, Bendix should not have passivated the remaining parts and was primarily negligent, even assuming that the heat treat done by Donohoo was improper. As to this, the Court makes no specific finding. * * * Bendix knew or should have known that there was a reasonable doubt as to whether the parts could be passivated. In passivating *all* of the remaining parts, Bendix failed to use the required due care."

I. We are bound by the findings of the trial court in this law action if supported by substantial evidence. Rule 344(f)1, Rules of Civil Procedure. Our review here is not de novo and the court's decision on the facts has the effect of a jury verdict. It was for the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. Naxera v. Wathan, Iowa, 159 N.W. 2d 513, filed June 11, 1968; Brooks v. Dickey, Iowa, 158 N.W.2d 11, 13, and citations. Further, the evidence will be construed in the light most favorable to the trial court's judgment. Naxera v. Wathan, supra; Brooks v. Dickey, supra; Thompson Wholesale Co. v. Frink, 257 Iowa 193, 198, 131 N.W.2d 779, 782; Phoenix v. Stevens, 256 Iowa 432, 436, 127 N.W.2d 640, 642.

The transaction between the parties here is generally classified as a bailment for mutual benefit. 8 C.J.S. Bailments § 8a, page 349; 8 Am.Jur.2d, Bailments, section 2, page 906. More specifically, however, it can be classified as a bailment for services. 8 C.J.S. supra, page 351; 8 Am. Jur.2d, Bailments, section 5, pages 910, 911.

The rule is well established a bailor makes out a prima facie case by proof of delivery of property in good condition, redelivery in damaged condition and the amount of damages. The bailee must then go ahead with his proof to rebut this presumption or prima facie case by showing the cause occurred through something consistent with due care on his part, in which case he is entitled to the verdict, unless the bailor sustains his burden of proof with evidence that nevertheless the loss would not have occurred but for the negligence of the bailee. Naxera v. Wathan, supra; Jones v. O'Bryon, 254 Iowa 31, 38, 116 N.W.2d 461, 465, and citations.

Defendant asserts the trial court put the burden on it of going ahead with the evidence when in fact the bolts were not in good condition when delivered. This

contention is without merit as plaintiff did not rely on a presumption or such a prima facie case but with its evidence in chief proved negligence by defendant's employees after delivery of the bolts and that plaintiff's loss resulted therefrom. The trial court found defendant was so negligent. That finding is supported by substantial evidence.

II. Plaintiff's witness McKay on cross-examination testified he passivates parts because his customers wanted it done and he did not know what is thereby accomplished. He stated the purpose of passivating is to put a transparent film on steel to make it more resistant to corrosion and discoloration but that experts disagree on what passivating does. During his examination both attorneys referred to "exhibit B". As we read the record and from our examination of the exhibit apparently they meant plaintiff's exhibit 2.

On redirect examination McKay was asked if he ever has passivated parts like "exhibit B". He stated he had, it was for plaintiff or another company after July, 1966 and he experienced no difficulty in processing them. Defendant objected to this testimony on the ground the part had not been identified and it was irrelevant, immaterial and hearsay. The trial court reserved ruling on the objections and the record fails to disclose a ruling thereon was ever made.

Defendant now asserts the trial court erred in allowing evidence of an "experiment" without requiring plaintiff to lay proper foundation. Several weaknesses of defendant's position are evident. The record does not show an adverse ruling and it is clear the trial court's ruling is based on negligence of defendant after it knew or should have known the bolts were not reacting properly to the solution and process being used.

■ At best it is very doubtful the objections made sufficiently informed the trial court defendant was objecting on the ground no proper foundation had been laid for admission of evidence of an experiment. We have consistently held the objection should point out in what particular or particulars the offered evidence is inadmissible and where this is not done there is no proper basis for reversal unless the grounds of the objection are obvious. Irlbeck v. Ronfeldt, Iowa, 152 N.W.2d 837, 846; Frederick v. Shorman, 259 Iowa 1050, 1060, 1061, 147 N.W.2d 478, 485, and citations.

We find no reversible error on defendant's assignment the trial court erred in admitting evidence of an experiment by McKay without plaintiff first laying sufficient foundation for the admission of evidence thereof.

III. Defendant asserts the trial court erred in refusing to make findings as requested under rule 179(b), R.C.P. It provides: "On motion joined with or filed within the time allowed for a motion for a new trial, the findings may be enlarged or amended, and the judgment modified accordingly. But a party, on appeal, may challenge the sufficiency of the evidence to sustain any finding, without having objected to it by such motion or otherwise."

After judgment was entered for plaintiff based on the trial court's detailed findings and conclusions defendant filed a motion for enlargement of findings, for judgment notwithstanding the verdict and for new trial. Plaintiff filed resistance to each.

■ Defendant's motion for enlargement of findings asked the court to make five separate findings favorable to defendant and which would have been contrary to the court's original findings. The trial court denied each request and set out the reasons therefor. Our study of the record reveals no error under this assignment.

No reversible error appears. The judgment for plaintiff must be affirmed.

Affirmed.

All Justices concur.