**ARTHUR ELEVATOR COMPANY, Appellant,**

v.

**Burly GROVE, Appellee.**

**No. 57069.**

Supreme Court of Iowa.

Dec. 17, 1975.

Morris C. Hurd, Ida Grove, and Mc-Donald, Sayre & McDonald, Cherokee, for appellant.

Hamilton, Connell, Redenbaugh & Duffy, Storm Lake, for appellee.

Heard before MOORE, C. J., and MASON, REES, HARRIS and McCORMICK, JJ.

MASON, Justice.

The trial judge stated he was not amused as to the way the record came in in this matter and described it as "the most bizarre lawsuit." A review of the record compels the conclusion there is ample support for his observation. During a period of more than two years before trial various pleadings, amendments thereto and motions were both dictated into the record and asserted in writings filed. There were additional pleadings and motions filed during trial. The facts and amounts claimed are confused, partly due to the poor records kept on both sides. Plaintiff appeals.

Plaintiff, Arthur Elevator Company, an Iowa corporation, was organized January 1, 1965. Its predecessor company of the same name was a partnership and had been in operation since 1943. Defendant Burly Grove is a farmer in Ida County.

Plaintiff commenced a law action seeking to recover the agreed charges for goods and merchandise sold and delivered to defendant which were alleged to be the actual and reasonable charges for such merchandise.

In an amended and substituted petition plaintiff demanded judgment for $2000.51 as the amount due. At this stage of the pleadings plaintiff had plead and was relying on an open continuous account as a theory for recovery. A bill of particulars marked exhibit B was attached and made a part of this petition. Plaintiff also prayed for an attachment alleging "defendant is about to dispose of his property with intent to defraud his creditors." A writ of attachment was ordered to be issued upon filing a $5000 bond. At the dictation of plaintiff the sheriff levied upon "such cattle owned by Burly Grove and in his possession to bring the exact amount of $3383, nearly as practicable" under the writ. It appears both parties concede 55 head of defendant's cattle were levied on.

Defendant filed motion for more specific statement requiring plaintiff to state in more specific details the itemization contained in exhibit B. The motion was sustained. Rather than seeking to comply with the court's order sustaining defendant's motion plaintiff again amended its petition. In a new division plaintiff alleged that on the 30th day of June 1967 an account was stated between plaintiff and defendant upon which a balance of $2000.51 was found due plaintiff from defendant. Judgment was demanded for this amount with interest and costs.

The day trial finally commenced defendant filed answer alleging inter alia the bill of particulars attached to plaintiff's petition was not a correct itemized statement showing the activity on the alleged account and further alleged defendant had not received all credits due him in connection with this account. In a separate division defendant asserted a counterclaim seeking damages for wrongful attachment. In another division defendant alleged plaintiff had failed to give him credit for certain drafts issued to plaintiff and had likewise failed to credit him with the price of corn defendant had delivered to the elevator. In still another division of his answer defendant sought recovery for work performed by him in applying fertilizer on farms of the elevator's customers under an oral contract fixing the rate of pay at $2.00 per acre.

Trial was to the court.

At the conclusion of plaintiff's evidence defendant moved for a directed verdict on the following grounds: "(1) Under Division I of Plaintiff's Petition this action is based on an open account. There is no proof in the record at this point of any entries or itemizations of any sums of money that

would equal the first entry, the same being $1,513.16. (2) Now, as to Division II, Counsel would move the Court to further direct a verdict because this is an account stated allegation; and I think to have an account stated you must have some admission that a sum certain is acknowledged due and owing between the parties. And in the record there is no sum certain determined or placed in the record. (3) And I want to strike all matter pertaining to service charges. There is no agreement that this could be applied to the account."

The court overruled part (1) of the motion and sustained parts (2) and (3).

During presentation of defendant's evidence he moved that the attachment be dissolved or dismissed. The motion was sustained.

As finally submitted to the court plaintiff's action was based on an open account with a beginning balance of $1513.66 as of January 1965. Plaintiff corporation had acquired the assets of its predecessor including accounts receivable. Plaintiff contended that among these accounts was one owed by defendant and the beginning balance of the account sued on was the balance carried forward from defendant's account with the partnership as of September 23, 1964.

The first debit shown in exhibit B was a service charge of $15.13. Other service charges were debited to defendant's account: February 27 in the amount of $15.28; March 31, $15.44; and April 3, $15.99, making a total of $1575.10 due April 30, 1965.

The beginning balance plus the service charges mentioned gives rise to the controversy over the amount of plaintiff's claim. The account was credited with two checks given by defendant to plaintiff, one June 8, 1965 in the amount of $700; the other June 29 in the sum of $875.10. The total of these checks was the exact amount of the April 30 balance shown by the account.

The trial court found plaintiff had failed to establish the pre-1965 balance relied on by plaintiff as one of the items included in the total amount for which recovery was demanded. The court refused to allow service charges in the sum of $359.40 for 1965, 1966 and 1967. Based on this calculation the trial court found the total debits on the 1965–67 account to be $5121. The court further found credits in the total amount of $5073.17 which included the June 8 and June 29 checks previously mentioned and determined plaintiff had proved an excess of debits over credits of $47.83.

The court found defendant had failed to sustain his burden of proof as to the various items for which he sought recovery in the separate divisions comprising his counterclaim with the exception of the claim based on the application of fertilizer on farms of plaintiff's customers and that division based upon his claim for wrongful attachment.

The court allowed defendant $2107.15 for fertilizer application, actual damages for wrongful attachment in the sum of $10,704.20 and exemplary damages in the sum of $3286.71 which resulted in a total judgment in favor of defendant of $16,050.13, after crediting the amount allowed on plaintiff's open account.

The issues presented on this appeal stem from plaintiff's assignments of error. It contends the court erred in: (1) deducting the amount of the opening entry on the account ledger from the amount due plaintiff by defendant as it was shown admitted and paid by defendant in subsequent entries on said account ledger; (2) awarding the defendant judgment for ammonia application done for the predecessor company in the years 1963 and 1964 as the plaintiff assumed no accounts payable from its predecessor; (3) awarding the defendant damages for wrongful attachment since the only damage claimed was loss due to prevention from sale of attached livestock and plaintiff had offered to release the livestock attached for sale; (4) awarding the defendant exemplary damages for wrongful attachment when no actual damage was shown or no malice was shown or when plaintiff agreed to release the attachment

on the livestock; and (5) awarding the defendant judgment including damages for wrongful attachment and exemplary damages to a defendant primarily on his testimony when the defendant attempted to deceive and mislead the court with altered and false exhibits.

The issues presented will be considered other than in the order set out above.

I. One of the issues presented by this appeal concerns the two invoices admitted into evidence during trial which, but for their year dates, were identical. Plaintiff's invoice was the original and bore the date May 26, *1961*. Defendant's invoice, on the other hand, was a photostat bearing the date May 26, *1967*. The copy from which the photostat was reproduced was unavailable. Defendant, while on the stand, denied any knowledge of a date alteration. In any event, a study of the two invoices leads one to the inescapable conclusion defendant's copy was altered.

Plaintiff argues the case should be reversed for this "obvious attempt to deceive the Court." Defendant counters these allegations indicate plaintiff's counsel is "desperate and very irresponsible" and that such is neither "proper" nor "ethical." Defendant insists plaintiff should have brought forth these accusations during trial with the aid of a handwriting expert. Although plaintiff made no motions or objections concerning the matter, it did extensively examine defendant in an attempt to achieve an explanation of the discrepancies.

In the face of such a record the trial court made no mention of the matter in its findings of fact or conclusions of law. It nevertheless did *not* award defendant credits for which the invoice was introduced as proof. The invoice, then, did not instigate any increase of damages for defendant. This court is now faced with the question whether it should reverse the entire decision based upon defendant's asserted false testimony concerning his invoice.

In a law action tried to the court, as here, this court construes the evidence in the light most favorable to the trial court's judgment and we will not weigh the evidence or pass on the credibility of the witnesses. *Thomas Truck & Cast. Co. v. Buffalo Cast. & Wh. Corp.,* 210 N.W.2d 532, 536 (Iowa 1973); *Frantz v. Knights of Columbus,* 205 N.W.2d 705, 708 (Iowa 1973); *Northrup v. Foster,* 204 N.W.2d 889, 891 (Iowa 1973); *Henschel v. Hawkeye-Security Insurance Company,* 178 N.W.2d 409, 415 (Iowa 1970); *Hawkeye Specialty Co. v. Bendix Corporation,* 160 N.W.2d 341, 343 (Iowa 1968).

The question is by what standard is the trial court as the trier of fact to be guided in determining the weight and credibility to be given the testimony of a witness where there is evidence tending to establish such witness gave and produced false testimony in a law action tried to the court.

In support of its contention the case should be reversed plaintiff insists the trial court should have rejected the entire testimony of defendant on other matters in issue before the court including those raised by his counterclaim. This position is apparently based on the maxim *"falsus in uno, falsus in omnibus",* that is, "he who speaks falsely on one point will speak falsely upon all." 3A Wigmore on Evidence (Chadbourn Rev.), section 1008. However, there are many forms, variations and qualifications of this rule: (1) the entire testimony must be rejected; (2) the entire testimony may be rejected; (3) the entire testimony must be rejected unless corroborated; and (4) the entire testimony may be rejected unless corroborated. *Id.,* sections 1009–1012. See also 4 Jones on Evidence (Sixth Ed. Gard), section 29:12. To sustain plaintiff's argument would require this court to adopt the first form of the maxim stated above.

It has been said "the maxim is not a rule of the law of evidence; it is merely an aid in weighing and sifting of evidence." *Dawson v. Bertolini,* 70 R.I. 325, 38 A.2d 765, 768.

*Iltis v. Gentilly,* 234 Iowa 689, 692, 13 N.W.2d 699, 700, has this statement:

"Where it appears from all the evidence that a witness willfully testifies falsely to some material fact, his testimony as to other matters *may* be disregarded except insofar as corroborated by other credible evidence. * * * [citing authorities]." (Emphasis supplied).

The court in *Sheridan Bros. v. Dealy,* 198 Iowa 877, 879, 200 N.W. 335, 336, stated: "It was clearly within the *discretion* of the trial court to grant a new trial upon a showing tending to establish that the successful party gave and produced false testimony. * * * [citing authorities]." (Emphasis supplied).

In our opinion a rule which would require the trial court as trier of fact in a law action tried to the court to adhere to the maxim—the entire testimony of a witness it believes has willfully testified falsely concerning any material matters must be rejected—would constitute a manifest invasion of the province of such trier of fact to determine the credibility of witnesses and the weight of testimony. Such pronouncement would be contrary to the rule in this state that in a law action it is the prerogative of the trier of fact to determine the credibility of witnesses and weight to be given their testimony. *Hawkeye Specialty Co. v. Bendix Corporation,* 160 N.W.2d at 343; *DeYarman v. State,* 226 N.W.2d 26, 29 (Iowa 1975).

■ It is our view that when the trier of fact in a law action finds any witness has willfully testified falsely to any material matter it should take that fact into consideration in determining what credit, if any, is to be given to the rest of his testimony. This would be in accord with the repeated holdings of this court in the trial of law actions that it is the function of the trier of fact, not of this court on review, to pass on the credibility of witnesses and the weight to be given their testimony. Of course, in equitable proceedings the rule is otherwise. See *Harper v. Coad,* 191 N.W.2d 682, 688 (Iowa 1971).

■ Examination of the record in the present case satisfies us the trial court applied the proper standard in assessing the credibility of witnesses. Plaintiff's contention in the respect urged in this division is without merit.

II. Plaintiff contends the trial court erred in deducting the April 30, 1965, balance ($1575.10) from the amount plaintiff claims is now due from defendant. In support of this assignment plaintiff urges six brief points. We consider first its contention the amount of the opening balance was admitted by defendant by his paying the exact amount thereof by two checks.

Basically, plaintiff's argument at this point, as we understand, is that the obvious inference to be drawn from defendant's act in delivering the two checks to plaintiff in June and the balance of his account on April 30 indicates defendant recognized the balance of his account on April 30 and intended to pay this balance in full by these two checks. Thus, a zero balance as of April 30 was produced and plaintiff seeks recovery only for the items charged from that date.

■ The inference to be drawn from defendant's delivery of the two checks presented a question of fact for the trier upon which reasonable minds could differ.

On plaintiff's appeal from an adverse judgment rendered in a law action tried to the court our review is not de novo but on errors assigned. Rule 334, Rules of Civil Procedure. In order to prevail on this contention under this limited extent of review it would be necessary for us to hold plaintiff had established its theory in the trial court as a matter of law. *In Re Estate of Dallman,* 228 N.W.2d 187, 191 (Iowa 1975).

Plaintiff did not sustain this burden; hence, the contention lacks merit.

III. At another point in argument in connection with its first assignment of error plaintiff relies on the theory the two checks given by defendant in June constitute an admission of an account stated as to this portion of the open account.

This contention, although belatedly presented to the trial court, will be considered as an issue properly presented for review since we believe the distinction between the position urged in this brief point and that in the preceding one is extremely thin.

Plaintiff frankly concedes in written argument that "one seeking to recover on an open account bears burden of proving each item included therein, and thus an open account may not commence with a debit balance but such principles do not preclude an action on an open account where the first item is un unpaid account stated." Faced with this principle plaintiff is compelled to rely on the theory of an account stated as to the $1575.10 since it was unable to meet its burden as to this item on the theory of an open account. Plaintiff's president testified he did not know nor did he have an itemization of what gave rise to the $1513.66, the first entry on exhibit B.

As indicated, plaintiff in an amendment to its petition had asserted in division 2 the theory of an account stated as of June 30, 1967, as to a balance of $2000.51. However, defendant's motion for a directed verdict as to this division made at the close of plaintiff's evidence had been sustained. As finally submitted to the court plaintiff's recovery was based on a theory of an open account. Review of the record reveals the theory of an account stated now urged was not presented until the close of all evidence in "plaintiff's argument in resistance to defendant's motion to dismiss plaintiff's petition" when plaintiff cited *In Re Estates of Koch,* 256 Iowa 396, 127 N.W.2d 571. Plaintiff contends in written argument in this court the two June checks given by defendant constituted an account stated as to the items for which the checks were given since the parties may agree upon the correctness of certain items in the account to the extent that portion of the open account becomes an account stated.

"An account stated is an agreement between parties who have had monetary transactions that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, to pay such balance. * * * [citing authorities].

" 'An account stated * * * properly exists only where accounts have been examined and the balance admitted as the true balance between the parties, * * *.' 1 Am.Jur.2d, Accounts and Accounting, section 21, page 396." *Weaver Construction Co. v. Farmers Nat. Bk.,* 253 Iowa 1280, 1287, 115 N.W.2d 804, 808. See also *Schnabel v. Display Sign Service, Inc.,* 219 N.W.2d 546, 548 (Iowa 1974).

*In Re Estates of Koch,* 256 Iowa 396, 400, 127 N.W.2d 571, 573, has this statement:

" 'An account stated may be shown by any instrument based upon past transactions and admitting indebtedness in a certain sum thereon. Thus the requisite assent may be evidenced by the execution of promissory notes, checks, duebills, or acceptances.' 1 C.J.S. Account Stated § 36, pp. 714, 715." See also *Rehmann v. Balduchi,* 169 N.W.2d 894, 896 (Iowa 1969).

From these and other authorities it appears to be well settled the element of agreement is an absolute requisite to the legal concept of account stated. In other words, in creating an account stated there must be a manifestation of mutual assent by the parties thereto that a final adjustment of the respective demands of each upon the other is being made.

In this connection it is to be noted defendant did not pay the entire account at the time of the delivery of either check to plaintiff. According to plaintiff's bill of particulars, on June 29, 1965, there was still due $947.21, exclusive of service charges.

There was no element of finality at this point in time as the parties were still transacting business and continued to do so through June 30, 1967.

In addition to the Iowa authorities mentioned plaintiff relies on *Behrens v. Kruse,* 132 Minn. 69, 155 N.W. 1065, 156 N.W. 1;

**390**

*Holt v. Western Farm Services, Inc.,* 19 Ariz.App. 335, 507 P.2d 674; and *Hansen v. Abbott,* 187 Neb. 248, 188 N.W.2d 717, as support for its position that the giving of the two checks in June constituted an account stated with respect to the $1575.10 and that this amount is therefore not in dispute.

Independent research discloses that the opinion of the Arizona appellate court reported in 19 Ariz.App. 335, 507 P.2d 674, was vacated and the judgment of the superior court affirmed by a decision of the Arizona Supreme Court. See *Holt v. Western Farm Services, Inc.,* 110 Ariz. 276, 517 P.2d 1272. It is possible the opinion of the Arizona Supreme Court was not available to plaintiff at the time of the filing of its brief and argument in this matter some three months after the opinion was announced.

■ In any event, we have studied the decisions cited. Although perhaps factually distinguishable from the case before us they all support the general proposition that an account stated is an agreement, express or implied, between parties who have had previous transactions with each other that a final adjustment of the respective demands of each upon the other is being made as to the whole account or certain items agreed upon; it is not founded upon the original items, but upon the balance ascertained by the mutual assent of the parties.

We have no quarrel with the foregoing statement of principle as we adhere to it in reaching our determination in this matter.

As stated, the trial court found plaintiff had failed to establish the pre-1965 balance relied on by plaintiff as one of the items included in the total amount for which recovery is demanded.

Plaintiff is compelled under the record before us to rely upon the two checks given by defendant in June as constituting an account stated and the fact its president testified statements were sent to defendant every 30 days following January 1, 1965, when the corporation took over the business of the partnership.

■ In division II, supra, we have stated the extent of our review in this matter and the principle to be followed in determining whether plaintiff can prevail on this contention. In light of that rule it is our opinion plaintiff failed to establish as a matter of law the requisites for an account stated as to the $1575.10 item. Plaintiff is not entitled to a reversal based on this contention.

■ IV. In another brief point in support of its first assignment plaintiff maintains defendant's answer does not tender an issue as to the beginning balance.

The record is far from satisfactory on this matter. The petition as amended is set forth in narrative form whereas the answer as set out in the record refers to which paragraphs of the petition are admitted and which are denied. As near as can be determined defendant filed an answer denying he was indebted to plaintiff in the sum stated or in any amount since he had not purchased or received the items set forth in plaintiff's bill of particulars. He further alleged he was entitled to credits on said account which had not been given.

In our opinion plaintiff's contention is without merit.

V. Plaintiff contends the trial court's award to defendant for ammonia application in the years 1963 and 1964 constituted error in that plaintiff did not assume the accounts payable of its predecessor partnership. Defendant counters this assertion is an affirmative defense which is now unavailable to plaintiff as such was not pleaded in answer to the counterclaim. In reply, plaintiff, relying upon no authority, denies this is an affirmative defense.

In light of the record we deem it unnecessary to determine whether plaintiff's contention in this respect constitutes an affirmative defense which would be unavailable unless specifically plead.

Plaintiff's president, Harold Godbersen, testified both upon direct and cross examination concerning the corporation's purchase of the partnership's accounts payable. Godbersen testified the corporation purchased the accounts receivable but he was not sure about the accounts payable. On cross-examination this witness testified, "I'm sure we didn't buy the accounts payable. * * * We didn't buy the accounts payable, because they were all handled before the take over. * * * If there were any [obligations in the payout] the old company took care of them after we entered."

■ It is significant no objections were lodged by the defense to the direct testimony, and, perhaps more important, the more specific and larger portion of the information was brought out by defendant's own cross-examination of Godbersen. The following statement of law dictates defendant cannot now dispute plaintiff's right to present the issue on appeal:

"Permitting the introduction of evidence on an issue not specifically pleaded obviates the necessity of its formal presentation. Where, as here, parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is rightfully in the case. * * * [citing authorities]." *In Re Estate of Millers*, 159 N.W.2d 441, 446 (Iowa 1968). See also *Holland v. Holland*, 161 N.W.2d 744, 746 (Iowa 1968) and *Peters v. Peters*, 214 N.W.2d 151, 155 (Iowa 1974).

The question is under what circumstances does a corporation purchasing a partnership also become liable for the partnership's liabilities.

■ The general rule is that where one company sells or otherwise transfers all its assets to another company, the purchasing company is not liable for the debts and liabilities of the transferor. *Smith v. Village Enterprises, Inc.*, 208 N.W.2d 35, 37 (Iowa 1973); 15 Fletcher Cyclopedia Corporations, section 7122 (Perm.Ed.1973 Rev. Vol.). The same principle stated in somewhat different language is recognized in *Luedecke v. Des Moines Cabinet Co.*, 140 Iowa 223, 228, 118 N.W. 456, 457: " * * * [A] corporation, like a partnership, may transfer its property in good faith to a *bona fide* purchaser, and such purchaser will hold it free from the debts of the corporation."

The Wisconsin court in *Chicago, M., St. P. & P. R. Co. v. Bluemound Oil Co.*, 275 Wis. 410, 82 N.W.2d 205, 206, said:

"The majority view in this country is that the mere fact that a corporation is organized to take over a business formerly conducted by a firm or individual is not of itself sufficient to render it liable for a debt or liability incurred by such firm or individual in conducting such business prior to incorporation."

However, the above statements of principle are not absolute in their application to all factual settings. In the *Luedecke* decision is this statement:

" * * * In order to render the purchasing company personally liable for the debts of the selling *corporation*, it must appear that (a) there be an agreement to assume such debts; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact. * * * [citing authorities]." 140 Iowa at 226, 118 N.W. at 457. (Emphasis supplied).

The preceding rule is recognized by the following authorities: *Golden State Bottling Company, Inc. v. N. L. R. B.*, 414 U.S. 168, 94 S.Ct. 414, 424, 38 L.Ed.2d 388 (note 5); *Forest Laboratories, Inc. v. Pillsbury Company*, 452 F.2d 621, 625 (7 Cir. 1971); *West Texas Refining & D. Co. v. Commissioner of Int. Rev.*, 68 F.2d 77, 81 (10 Cir. 1933); *Comstock v. Great Lakes Distributing Company*, 209 Kan. 306, 496 P.2d 1308, 1311; *J. F. Anderson Lumber Co. v. Myers*, 296 Minn. 33, 206 N.W.2d 365, 368; *Lamb v. Leroy Corporation*, 85 Nev. 276, 454 P.2d 24, 27; *McKee v. Harris-Seybold Co., Div. of*

*Harris-Int. Corp.*, 109 N.J.Super. 555, 264 A.2d 98, 101–102, aff'd, 188 N.J.Super. 480, 288 A.2d 585.

Of course, the factor involving consolidation (and merger) would be inapplicable where a corporation buys a partnership. Likewise, the instant factual situation and evidence in no manner indicate an agreement to assume debts. In fact, the only testimony on point is that there was no such agreement. If the evidence were otherwise, there is no logical reason a corporation could not agree to assume the debts of its predecessor partnership. The applicability of the "continuation" and "fraud" factors in a given fact setting would be logical in the corporation-partnership situation. Again, no evidence of fraud exists in the instant transferal of assets. Thus, it would be reasonable to conclude the only factor which may be applied here is that of "continuation."

In *Zander v. Larsen*, 41 Wash.2d 503, 250 P.2d 531, a corporation was formed for the purpose of taking over a business operated as a partnership. The former partners were the *only* shareholders of the new corporation, which purchased all assets of the partnership in exchange for corporate shares. It was held the corporation was merely a continuation of the partnership and was therefore bound to pay its debts. The partners, by incorporating, had merely "put on another coat."

In this connection, see *Home News v. Goodman*, 182 Md. 585, 35 A.2d 442, 445, where the court held a corporation organized at the instance of partners to publish a shopping paper in order to provide work for a printing press owned and operated by the partnership was in reality the partners. In other words, the partnership and the corporation were one in the same. Therefore, the corporation was liable for commissions on advertising secured for the paper.

In *Miller v. South Hills Lumber & Supply Co.*, 334 Pa. 293, 6 A.2d 92, the person owning the predecessor company also owned practically all of the stock in the new corporation. The Pennsylvania court had this to say: " * * * [T]he corporation was substantially a continuance of the old business in a new form." The same person continued to dominate the business. "The old name was retained. The assets of the old company were transferred to the new one. Under such circumstances, the courts will not permit the assets in the new company to escape the claims of creditors of the old. The corporate fiction will be disregarded and a continuing liability will be imposed on the business for obligations accrued before incorporation, at least to the extent of pursuing the assets transferred." 334 Pa. at 296, 6 A.2d at 94.

The Wisconsin court, in holding a corporation liable for its partnership-predecessor's debts, stated: "In this case we had a partnership incorporate. Then there were several transfers of the assets and stock and a change in name. However, the business remained substantially the same. The machinery and equipment was substantially the same. The business was operated in the same building. * * * The business maintained the same accountant, with one interrupted period. * * * Apparently the same books were used by various entities." *Columbia Stamping & Mfg. Co. v. Reich*, 28 Wis.2d 297, 137 N.W.2d 45, 48.

*Alexander & Baldwin, Inc. v. Peat, Marwick, M. & Co.*, 385 F.Supp. 240, 244 (S.D.N.Y.1974), has this statement: " 'When individuals or corporations transfer their property to a new corporation, substantially owned and controlled by the transferers, the new company takes the property subject to the claims of the nonassenting creditors of the transferers.' " (Quoting from *Pennsylvania Knitting Mills of Reading v. Bibb Mfg. Co.*, 12 Pa.Super. 346, and *Kulka v. Nemirovsky*, 321 Pa. 234, 182 A. 692, 693–694.)

In the present case plaintiff corporation was organized January 1, 1965. Its predecessor was a partnership of the same name. The record indicates at least some of the partners were directors of the new corpora-

tion. Harold Godbersen, president of the corporation and previously a partner, testified the corporation retained the partnership's manager, set of books, and bookkeeping system. The old and new businesses retained identical names.

There is no evidence why the partnership transformed itself into a corporation. It was not shown the partnership was insolvent or in any way went defunct or stopped business. The company apparently continued its business in the same manner but for the change in organization. Defendant continued to apply fertilizer to farms of customers of the newly formed organization in 1965 and 1966.

██ The court made no mention of plaintiff's contention in the respect now under consideration in its findings of fact, conclusions of law and judgment. Nevertheless, it is apparent the court in making the award challenged found plaintiff-corporation was a mere continuation of the selling partnership.

It is our view there is substantial evidence to support this conclusion. The trial court did not apply any erroneous rule of law which would materially affect its decision. Our position is not inconsistent with *Allen v. M. E. Church*, 127 Iowa 96, 99, 102 N.W. 808, 809–810, 69 L.R.A. 255, as there is a factual distinction between the cases.

Plaintiff's contention lacks merit.

VI. In another assignment of error plaintiff maintains the court erred in awarding defendant damages for wrongful attachment as the only damage claimed was loss due to prevention from sale of attached livestock in view of the fact plaintiff had offered to release the livestock for sale.

Plaintiff does not cite a single authority in its brief and argument in support of its proposition.

██ This court has frequently held that we are under no compulsion to review any assignment of error when the complaining party cites no authority in support of his argument. The assignment is deemed waived. *State v. Mattingly*, 220 N.W.2d 865, 871 (Iowa 1974); *State v. Scovill*, 224 N.W.2d 221, 223 (Iowa 1974); *State v. King*, 225 N.W.2d 337, 342 (Iowa 1975); and authorities cited.

VII. Plaintiff next contends the trial court's award of exemplary damages constituted error "when no actual damage was shown, or no malice was shown, or when Plaintiff agreed to release the attachment on the livestock." It is clear defendant sustained actual damages due to the attachment. The issue, then, is whether under these facts defendant was entitled to exemplary damages.

The trial court found there was not probable cause for the issuance of the attachment and concluded: "When the attachment is unwarranted, there is an inference of malice. The inference of malice, under the circumstances given, may be inferred whether there is direct proof of malice or not."

Plaintiff, on the other hand, contends and cites this court to a case which states, "It does not follow, however, that the lack of probable cause was *of itself* sufficient evidence from which the jury could properly infer the defendant acted with malice in the attachment of plaintiff's wages. * * * [citing authorities]." (Emphasis in the original) *Crouter v. United Adjusters, Inc.*, 259 Or. 348, 485 P.2d 1208, 1214–1215.

The foregoing statement, however, does not meet the trial court's conclusion of law head on. And, in fact, the *Crouter* court, immediately following the above quotation, stated: " ' * * * What the courts have said, however, is that the law will permit the jury to draw an inference of malice in most cases where a want of probable cause is found.' " 259 Or. at 362, 485 P.2d at 1215.

Thus, *Crouter* actually lends support to the trial court's conclusion malice *may be* inferred when an attachment is unwarranted, i. e., when probable cause is lacking, as found in the findings of fact. Lest there be

any doubt of the rule in Oregon, the court reiterated its stand in the appeal after remand of *Crouter.*

"We have recognized, as have the text writers, that in most cases in which the evidence shows a lack of probable cause, there will also be sufficient evidence to support a finding of malice, but that malice is an independent element which must be proved to the jury by a preponderance of the evidence. In order to clarify any previous misunderstanding, we adopt the following as a correct statement of the law on this subject: In an action for damages for wrongful attachment the plaintiff, in addition to showing that the defendant did not have probable cause for the attachment, must also prove that the defendant acted with malice. Although the fact that a defendant did not have probable cause for an attachment does not necessarily mean that he acted with malice, the evidence which shows a lack of probable cause may also be considered on the issue of malice. If that evidence alone convinces the jury that the defendant acted with malice, it may so find. But the jury must find, from either that evidence or from other evidence, that in causing the attachment to be made the defendant acted with bad motives or ill will so as to constitute malice." 266 Or. 6, 510 P.2d 1328, 1329–1330.

There is Iowa case law on wrongful attachment, albeit somewhat aged, which supports the foregoing. *Richards v. Jewett Bros. & Co.,* 118 Iowa 629, 92 N.W. 689, has this statement: "This is not the statutory action upon the attachment bond, but an independent one, alleging want of probable cause and malice; and, to entitle the plaintiff to a recovery, he must establish both of these propositions. * * * [citing authorities]."

But, in *Ahrens v. Fenton,* 138 Iowa 559, 561, 115 N.W. 233, 234, this court added, " * * * The fact of suing out the attachment without reason to believe the ground stated therein to be true would in itself tend to show malice. * * * [citing authorities]." See also *Welsh v. Haleen,* 157 Iowa 647, 649–650, 138 N.W. 502, 503.

This court has more recently discussed exemplary damages and malice in other contexts. These rules of law, nevertheless, support the trial court and are also in accord with *Crouter.*

"A plaintiff asking exemplary damages is not required to show the defendant acted out of spite or with wicked intent or actual malice. *Sebastian v. Wood,* 246 Iowa 94, 66 N.W.2d 841 (1954). True, the term 'malice' is used in connection with exemplary damages, but we explained the term thus in *McCarthy v. J. P. Cullen & Son Corp.,* 199 N.W.2d 362, 369 (Iowa 1972):

" ' "Malice" need not be actual ill will or hatred toward another. When that state of mind is present, there is actual malice. However, more commonly in cases of this kind there is simply legal malice, which may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights. We have also defined legal malice as the intentional commission of a wrongful act without just cause or excuse.' " *Hagenson v. United Telephone Company of Iowa,* 209 N.W.2d 76, 82 (Iowa 1973). See also *Giltner v. Stark,* 219 N.W.2d 700, 708 (Iowa 1974).

" ' * * * The rule would seem to be: exemplary damages may be awarded where defendant acts maliciously, but malice may be inferred where defendant's act is illegal or improper; where the nature of the illegal act is such as to negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of defendant, liability for exemplary damages is not based upon the maliciousness of the defendant but is based, rather, upon the separate substantive principle that illegal or improper acts ought to be deterred by the exaction from the defendant of sums over and above the actual damage he has caused.' " *Syester v. Banta,* 257 Iowa 613, 628–629, 133 N.W.2d 666, 676;

Northrup v. Miles Homes, Inc. of Iowa, 204 N.W.2d 850, 859 (Iowa 1973).

 It should again be stressed plaintiff does not dispute the finding the attachment was wrongful. It does not contend there in fact was probable cause. The inquiry at this point, then, must proceed to determine whether malice, as defined above, may logically be inferred here from the lack of probable cause. Some repetition of the facts in this regard is inevitable.

Harold Godbersen approved the attachment. The abstract of his testimony discloses: "The need for the attachment in this case is the same reason for taking a mortgage on a house or any other transaction. It is just a matter of business. If it is possible to attach something for a bill that is due and promise has been made to have it paid, it appears that it would only be good business if you have an opportunity to do just that, a part of the law. The Defendant Grove was about to dispose of all of his property and defraud his creditors. Godbersen never visited with Burly Grove about the account. The Defendant, Mr. Grove, was not moving out of the State or the country. He was not telling around that he was going to have a farm sale. * * *."

"The reason the Writ of Attachment was requested was so that we could collect the bill. If it is necessary it is our position that in every lawsuit you are entitled to a Writ of Attachment, I would do it again."

The abstract of defendant's testimony reveals the following: "I never had intentions of moving out of the country or state. I never made any arrangements for a farm sale publicly or privately, prior to the date of this attachment.

"I never intended to sell secretly, quietly or in the nighttime any of the assets with any of the intentions of defrauding my creditors."

The trial judge, as fact finder, found plaintiff caused the writ of attachment to be issued without probable cause, and inferred from this fact the existence of malice on the part of plaintiff. And, " * * * trial court's findings of fact are equivalent to the special verdict of a jury; if supported by substantial evidence they will not be disturbed; we view the evidence in its light most favorable to the judgment, whether contradicted or not; the findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and in case of ambiguity, they will be construed to uphold, rather than defeat, the judgment." Farmers Insurance Group v. Merryweather, 214 N.W.2d 184, 186 (Iowa 1974) and authorities cited.

In support of the trial court's findings, there is Godbersen's testimony he would always attempt to attach in every lawsuit if necessary. This was the logic applied instantly, even though the other testimony indicates nothing showing Grove was about to "dispose of his property with intent to defraud his creditors." In this regard, a plaintiff may well have a good claim against a defendant, but still have no statutory ground to seek attachment. Yet, Godbersen stated that, if necessary, "in every lawsuit" one is entitled to attach.

There are two bases upon which a finding of malice could be grounded. First is the inference of malice which may be drawn from the fact there was no probable cause. Second, the possibility exists Godbersen's theory of attachment may "negative any inference of feeling toward" defendant.

There is substantial evidence to justify the trial court's award of exemplary damages.

In reaching our determination in this matter every contention urged by plaintiff in its brief and argument has been considered whether specifically mentioned in the course of this opinion or not.

We find no basis for reversal.

The case is therefore—affirmed.